814 So.2d 681 (2002)
Elena Ledo BENNETT and Micah Keith Bennett
v.
Dr. Robert KRUPKIN and St. Paul Fire and Marine Insurance Company.
No. 2000 CA 0023R.
Court of Appeal of Louisiana, First Circuit.
March 28, 2002.
Writ Denied June 21, 2002.
*682 Steve Thompson, Baton Rouge, for Plaintiffs/Appellees, Elena Bennett and Micah Bennett.
Donald Zuber, Baton Rouge, Robert Wilson, Dallas, TX, for Defendant/Appellee, Dr. Robert Krupkin.
Margaret Bradley, Metairie, for Defendant, St. Paul Fire & Marine Ins. Co.
David A. Woolridge, Jr., Baton Rouge, for Intervenor/Appellant, Louisiana Patient's *683 Compensation Fund Oversight Board.
Before: WHIPPLE, FOGG and GUIDRY, JJ.
WHIPPLE, J.
This medical malpractice action is before us on remand from the Supreme Court, with instructions for this court to review the propriety of the trial court's judgment maintaining the exception of prematurity filed by Dr. Robert Krupkin. In maintaining the exception of prematurity, the trial court dismissed plaintiffs' claims against Dr. Krupkin without prejudice, on the basis that he was a qualified health care provider, and, accordingly, plaintiffs were required to first present their claim to a medical review panel. The Louisiana's Patient's Compensation Fund Oversight Board (the Oversight Board), intervenor in this matter, challenges this ruling. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On October 25, 1996, Elena Ledo Bennett was diagnosed with stage IV inoperable breast cancer. On April 17, 1997, less than six months later, Elena and her husband, Micah Keith Bennett, brought suit against Dr. Robert Krupkin and his insurer, St. Paul Fire & Marine Insurance Company (St. Paul), for an alleged failure to properly diagnose Elena's breast cancer.[1] Dr. Krupkin filed an exception of prematurity, contending that he was a qualified health care provider under the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.41, et seq. and that, as such, plaintiffs were required to first present their claim to a medical review panel.[2]See LSA-R.S. 40:1299.47.
Thereafter, the Oversight Board filed a petition of intervention, seeking a determination of whether Dr. Krupkin was a qualified health care provider and, accordingly, whether he was enrolled as a member of the Patient's Compensation Fund (PCF) pursuant to the Medical Malpractice Act. In support of its claim that Dr. Krupkin was not a qualified health care provider with respect to the Bennetts' claim, the Oversight Board contended that, while Dr. Krupkin was covered by an underlying policy of medical malpractice insurance and had paid the applicable surcharge as of the date of the alleged malpractice, he had no underlying policy of insurance as of the date this claim was filed. Accordingly, the Oversight Board averred that Dr. Krupkin was not qualified for this claim. Later, the Oversight Board also asserted that Dr. Krupkin was not a qualified health care provider because, although he had paid the appropriate surcharge to the PCF for the period encompassing the date of the alleged malpractice, he had failed to pay a surcharge to the PCF for the period encompassing the date this claim was filed, *684 as it contended was required by LSA-R.S. 40:1299.42(A).
St. Paul then filed a motion for summary judgment, contending that it did not provide coverage to Dr. Krupkin for this claim. St. Paul asserted that Dr. Krupkin had not renewed his "claims-made" policy, which lapsed on January 15, 1997,[3] and that he also failed to purchase an optional reporting endorsement to extend that coverage. Thus, it contended that there was no continuing coverage as of the date the Bennetts filed their initial complaint on March 20, 1997.
The Bennetts filed a cross-motion for summary judgment, claiming that the St. Paul policy clearly provided coverage, under Hedgepeth v. Guerin, 96-1044 (La. App. 1st Cir.3/27/97), 691 So.2d 1355, writ denied, 97-1377 (La.9/26/97), 701 So.2d 983, wherein this court held that a provision of a claims-made policy requiring that a claim be made within the policy period is without effect if it reduces the prescriptive period against the insurer to less than one year, in violation of LSA-R.S. 22:629.
The Oversight Board also filed a motion for summary judgment, seeking a determination that Dr. Krupkin was not a qualified health care provider under the Medical Malpractice Act because as of the date the Bennetts filed their complaint, March 20, 1997, Dr. Krupkin had failed to pay a surcharge deemed due by the Oversight Board as applicable to the extended claim period.
Following a hearing, the trial court denied St. Paul's motion for summary judgment by judgment dated March 30, 1999. A hearing was then conducted on the motions for summary judgment filed by the Bennetts and the Oversight Board and the exception of prematurity filed by Dr. Krupkin. Following the hearing, the trial court rendered three judgments as follows: (1) by judgment dated September 3, 1999, the trial court granted final partial summary judgment in favor of the Bennetts, ruling that the St. Paul policy provided coverage for this alleged act of malpractice; (2) by judgment dated September 3, 1999, the trial court denied the Oversight Board's motion for summary judgment; and (3) by judgment dated September 7, 1999, the trial court maintained Dr. Krupkin's exception of prematurity and dismissed him from the suit without prejudice, finding that Dr. Krupkin was a qualified health care provider under the Medical Malpractice Act and reserving plaintiffs' rights to rename him as a defendant after completion of the medical review panel proceedings.
Subsequently, St. Paul appealed the trial court's partial final judgment granting the Bennetts' motion for summary judgment and finding coverage under its policy. This court affirmed the trial court's judgment on the issue of coverage in Bennett v. Krupkin, 99-2702 (La.App. 1st Cir.12/22/00), 779 So.2d 923. The Supreme Court denied writs, Bennett v. Krupkin, XXXX-XXXX (La.3/30/01), 788 So.2d 1190; therefore, the judgment finding that Dr. Krupkin was covered by the St. Paul policy at the time the Bennetts filed their claim is a final judgment.
The Oversight Board also sought to appeal the trial court's judgment maintaining Dr. Krupkin's exception of prematurity. This court, in an unpublished opinion, stated it was unable to find "any statutory or jurisprudential basis which grants the [Oversight Board] standing to appeal either the judgment or the denial of motion *685 for new trial on this judgment." Accordingly, the court dismissed the Oversight Board's appeal. Bennett v. Krupkin, XXXX-XXXX, pp. 2-3 (La.App. 1st Cir.12/22/00) (unpublished opinion).
On application for supervisory writs, the Supreme Court, citing LSA-C.C.P. arts. 1091, 2083 and 2086 and LSA-R.S. 40:1299.44(D)(2)(b)(x), deemed there was authority for the Oversight Board to pursue its appeal and reversed this court's dismissal of the appeal. Bennett v. Krupkin, XXXX-XXXX (La.10/16/01), 798 So.2d 940. Thus, this matter was remanded to this court, for consideration of the merits of the Oversight Board's appeal.

PREMATURITY
Louisiana Code of Civil Procedure article 926 provides for the dilatory exception of prematurity. Prematurity is determined by the facts existing at the time suit is filed. Evidence may be introduced to support or controvert the exception, when the grounds do not appear from the petition. LSA-C.C.P. art. 930. The exception raising the objection of prematurity may be utilized in cases where the applicable law or contract has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Dunn v. Bryant, 96-1765, p. 4 (La.App. 1st Cir.9/19/97), 701 So.2d 696, 699, writ denied, 97-3046 (La.2/13/98), 709 So.2d 752.
The Medical Malpractice Act provides such a mechanism in that it requires all medical malpractice claims against qualified health care providers to be submitted to a medical review panel prior to filing suit in any court. LSA-R.S. 40:1299.47(B); Dunn, 96-1765 at p. 5, 701 So.2d at 699. If an action against a health care provider covered by the Act has been commenced in a court of law and the complaint was not first presented to a medical review panel, an exception of prematurity must be maintained, and the plaintiffs suit must be dismissed. See LSA-C.C.P. art. 933; LSA-R.S. 40:1299.47(B)(1)(a)(i); Dunn, 96-1765 at p. 5, 701 So.2d at 699. Thus, this court must determine whether Dr. Krupkin was covered by the Medical Malpractice Act as a qualified health care provider at the time the Bennetts instituted their claim.

MEDICAL MALPRACTICE ACT
The Medical Malpractice Act confers upon qualified health care providers two principal advantages in actions against them for malpractice. First, the liability of a qualified health care provider for all malpractice claims for injuries to or death of any one patient may not exceed $100,000, and the total amount recoverable from all defendants and the PCF for all malpractice claims for injuries to or death of any one patient, exclusive of future medical care and related benefits, may not exceed $500,000, plus interest and costs. LSA-R.S. 40:1299.42(B). Second, as stated above, no action for malpractice against a qualified health care provider or his insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement. LSA-R.S. 40:1299.47(A); Dunn, 96-1765 at pp. 5-6, 701 So.2d at 699.
Health care providers may take advantage of these benefits only if they qualify under the Act by meeting certain statutory requirements as set forth in LSA-R.S. 40:1299.42(A). These benefits are bestowed on health care providers as long as they remain qualified under the Act. LSA-R.S. 40:1299.45(A). The burden is on a defendant to prove prematurity and initial immunity from suit as a qualified health *686 care provider under the Medical Malpractice Act. Dunn, 96-1765 at p. 6, 701 So.2d at 699.

DISCUSSION
Louisiana Revised Statute 40:1299.42 sets forth the requirements for a health care provider seeking to qualify under the Medical Malpractice Act as follows:
A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
On remand, the Oversight Board, while noting that the final determination of coverage by the St. Paul policy satisfies the first prong of LSA-R.S. 40:1299.42(A), asserts that the second prong of the statute was not met, i.e., that Dr. Krupkin had not paid a surcharge to cover the period during which the Bennetts filed their claim. The Oversight Board further contends that because Dr. Krupkin's underlying coverage with St. Paul was claims-made coverage, his PCF coverage is also claims-made.[4] Accordingly, it asserts, Dr. Krupkin had to be qualified (i.e., had to pay a surcharge) both as of the date of the alleged malpractice and as of the date that the claim was filed with the PCF in order for there to be PCF coverage.
Dr. Krupkin and the Bennetts, on the other hand, contend that the coverage afforded Dr. Krupkin under the PCF is concurrent with the coverage of his underlying policy with St. Paul. Accordingly, they assert that because there is coverage for this claim under the St. Paul policy, there was also PCF coverage. We agree.
In this case, no one disputes that Dr. Krupkin had paid the appropriate insurance premium and surcharge and was in fact a qualified health care provider at the time of the alleged malpractice. Moreover, as stated above, this court has also previously determined that the underlying medical malpractice insurance policy was in effect, by operation of law, as of the date the Bennetts filed this claim.
Louisiana Revised Statute 40:1299.42(E)(1), governing the methods of establishing proof of financial responsibility, specifically provides that financial responsibility is established by filing with the Oversight Board proof that the health care provider is insured by a malpractice liability policy "with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider." (Emphasis added). Additionally, we note that pursuant to LSA-R.S. 40:1299.45(A)(1), the health care provider is liable to the patient "to the extent and in the manner specified" in the Medical Malpractice Act "while malpractice liability insurance remains in force."
A plain reading of the direct and clear language of these statutes leads to the conclusion that once a health care provider *687 has qualified under the Medical Malpractice Act, the health care provider's qualification under the Act is concurrent with the coverage under the underlying insurance policy, i.e., qualification takes effect and follows the same form as the policy of insurance. In so concluding, we note that the phrase "taking effect and following the same form as the policy of malpractice liability insurance" in LSA-R.S. 40:1299.42(E)(1) is not defined or further explained in the Medical Malpractice Act. In Abate v. Healthcare International, Inc., 560 So.2d 812, 813 (La.1990), certain health care providers, who undisputedly were not qualified at the time of the acts of alleged malpractice, purchased underlying medical malpractice liability insurance policies with coverage retroactively encompassing the dates of the alleged tortious acts. These health care providers then contended that LSA-R.S. 40:1299.42(E) governed the period of qualification and, accordingly, their PCF qualification retroactively covered the claims at issue. However, the Supreme Court rejected this argument, and refused to allow the health care providers to retroactively qualify, holding that the Act does not provide coverage to health care providers who fail to initially qualify prior to the commission of the alleged tortious conduct. Abate, 560 So.2d at 813, 817; see also Mehalik v. Morvant, 451 So.2d 1321, 1322-1323 (La.App. 1st Cir.1984); see generally Williams v. St. Paul Insurance Companies, 419 So.2d 1302, 1304-1305 (La.App. 4th Cir.1982).
It is undisputed herein that Dr. Krupkin was qualified under the Act prior to and at the time of the alleged malpractice herein. (In fact, he had been qualified under the Act for many years prior to this act of alleged malpractice.)
Moreover, with regard to the collection of surcharges, the statutes make clear that where proof of financial responsibility is established through an insurance policy, the responsibility for collecting the proper annual surcharge lies with the insurer. LSA-R.S. 40:1299.44(A)(2)(a) & (A)(2)(d). The insurer must then remit the surcharge collected to the Fund within forty-five days of the payment of the premium. LSA-R.S. 40:1299.44(A)(3)(a) & (b). The statutes further provide that if the insurer fails to remit the appropriate surcharge, the Fund is authorized to assess a penalty and collect attorney's fees against the insurer or to pursue legal remedies against the insurer. LSA-R.S. 40:1299.44(A)(3)(a) & (b) and 40:1299.44(A)(4). There is simply no provision in the Act authorizing the Oversight Board to terminate or otherwise restrict the insured health care provider's qualification under the Act if an improper surcharge is collected by the insurer. Thus, any dispute over the actuarial computation of the surcharge or collection of the appropriate surcharge is to be resolved between the Fund and the insurer. See Brown v. St. Paul Fire & Marine Insurance Company, 31,777, pp. 2-3 (La.App. 2nd Cir.3/31/99), 731 So.2d 953, 954-955, writ denied, 99-1211 (La.6/4/99), 744 So.2d 634.
In the instant case, Dr. Krupkin purchased a policy of insurance from St. Paul, and St. Paul collected and remitted to the Fund the surcharge associated with that policy. Moreover, there has been a final determination that coverage under the St. Paul policy remained in effect through the time when the Bennetts filed the instant claim. Thus, the policy period and attendant PCF coverage, for which Dr. Krupkin paid, provided protection to him for a legally-governed period of time encompassing this claim. Any argument by the Oversight Board that the surcharge collected for that period of qualification was actuarially insufficient, because of the extension of the policy's term by operation *688 of law, has absolutely no effect on Dr. Krupkin's qualification herein.
Accordingly, we find no error in the trial court's conclusion that Dr. Krupkin was a qualified health care provider under the Medical Malpractice Act with respect to the Bennetts' claim. Thus, the exception of prematurity was properly maintained.

CONCLUSION
For the above and foregoing reasons, the September 7, 1999 judgment of the trial court, maintaining Dr. Krupkin's exception of prematurity, is affirmed. Costs of this appeal in the amount of $1,201.48 are assessed against the Louisiana Patient's Compensation Fund Oversight Board.
AFFIRMED.
NOTES
[1] Elena later died from the cancer, and the petition was then amended to name as plaintiffs Micah Keith Bennett, individually and as administrator of the estate of his and Elena's minor child, Avery Brooks Bennett; and Martin Fischer, as administrator of the estate of Mitchell Jorge Fischer, the minor child of Elena and Martin Fischer from their previous marriage. Plaintiffs further amended the petition to assert wrongful death actions.
[2] On March 20, 1997, prior to instituting this suit, the Bennetts filed a complaint against Dr. Krupkin in accordance with LSA-R.S. 40:1299.47, seeking to have their complaint submitted to a medical review panel. However, they were advised by the Oversight Board that Dr. Krupkin was not a "qualified health care provider" in that his medical malpractice insurance had lapsed on January 15, 1997, and he had failed to purchase extended coverage. Accordingly, the Bennetts proceeded with this suit.
[3] Although not entirely clear from the record, Dr. Krupkin apparently was retiring from the active practice of medicine.
[4] Under a "claims-made" policy, coverage is effective only if the negligent harm is discovered and reported within the policy term. This is contrasted with an "occurrence" policy, where the coverage is effective if the negligent harm occurs within the policy period, regardless of the date of discovery. Hedgepeth, 96-1044 at p. 6, 691 So.2d at 1359.