907 So.2d 90 (2005)
Jeffrey F. GRIFFIN, Hildreth B. McCarthy and David C. Longcope
v.
LOUISIANA PATIENT'S COMPENSATION FUND OVERSIGHT BOARD.
Nos. 2004 CA 0613, 2004 CA 0614.
Court of Appeal of Louisiana, First Circuit.
March 24, 2005.
*91 James F. Willeford, New Orleans, for Plaintiffs  Appellees Jeffrey F. Griffin, Hildreth B. McCarthy, and David C., Longcope.
Max J. Cohen, New Orleans, for Intervenors  Appellees Insurance Underwriters, Ltd. and Edwin O. Schlesinger.
David A. Woolridge, Jr., Larry M. Roedel, Baton Rouge, for Defendant  Appellant, Louisiana Patient's Compensation Fund Oversight Board.
Robert J. Burns, Jr., Baton Rouge, for Intervenor  Appellee St. Paul Fire & Marine Ins. Co.
Before: PARRO, KUHN, and WELCH, JJ.
WELCH, J.
This is an appeal by the defendant, the Louisiana Patient's Compensation Fund Oversight Board ("the PCF Board"), from a summary judgment granted in favor of the plaintiffs, Drs. Jeffrey F. Griffin, Hildreth B. McCarthy, and David C. Longcope ("the plaintiff health care providers"), and the intervenor, St. Paul Fire & Marine Insurance Company ("St. Paul"), finding the plaintiffs to be "qualified health care providers" under the provisions of the Medical Malpractice Act (La. R.S. 40:1299.41, et seq.) ("the MMA") for the time period of October 19, 2001, through January 11, 2002 ("the time period at issue"), and ordering the PCF Board to report them as qualified health care providers for the time period at issue.[1] For the following reasons, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL HISTORY
The facts of this case are generally undisputed. The PCF Board is a legislatively created entity that administers the Patient's Compensation Fund ("the PCF"), which holds private monies in trust to compensate victims of medical malpractice and to protect qualified health care provider members who may be liable for damages caused by their malpractice.
The plaintiff health care providers are and have been qualified health care providers under the MMA[2] and are and have been insured by St. Paul with medical malpractice liability limits of $1 million/$3 million. On October 19 of every year, the St. Paul medical malpractice insurance policy was renewed. However, in 2001, Insurance Underwriters, Ltd. ("IU"), the agent for St. Paul, did not deliver the renewal policy, the policy invoices, PCF surcharge invoice, and other renewal documentation to the plaintiff health care providers until December 17, 2001.
On January 7, 2002, the plaintiff health care providers issued a check to St. Paul in the amount of $16,716 for the insurance premium, and a check to the PCF in the amount of $24,136, for the payment of their surcharge, as calculated by St. Paul. St. Paul accepted the insurance premium payment and has provided continuous malpractice *92 coverage from October 19, 2001, continuing to and beyond January 11, 2002, with no lapse in coverage. On January 11, 2002, the check made payable to the PCF was received by the PCF Board, along with a cover letter indicating that the payment was for the period October 19, 2001 to October 19, 2002. The PCF Board deposited the check, thereby, accepting the full twelve-month surcharge tendered by the plaintiff health care providers.
Approximately ten weeks later, on March 24, 2002, the PCF Board sent written notice to the plaintiff health care providers informing them that they were refunding a portion of the PCF surcharge payment due to the untimely receipt of the payment. Additionally, the PCF Board took the position that a lapse in PCF "coverage" had occurred, since the annual renewal surcharge was received by the PCF Board after the date the surcharge was allegedly due. Consequently, the PCF Board has declared that the plaintiff health care providers were not "qualified health care providers" under the MMA for the time period at issue.
On January 3, 2003, a claim for medical malpractice was filed against Dr. Griffin, one of the plaintiff health care providers herein, for professional services rendered by him on January 4, 2002. The PCF Board asserted that Dr. Griffin was not a qualified health care provider on this date, and therefore, he has no PCF coverage. Thereafter, the plaintiff health care providers instituted proceedings seeking declaratory judgment as to whether they were "qualified health care providers" under the MMA during the time period at issue or whether the untimely payment of the surcharge (through no fault of the health care providers) resulted in a lapse in PCF coverage. St. Paul and IU intervened in the suit seeking the same relief as the plaintiff health care providers.
The plaintiff health care providers and St. Paul filed motions for summary judgment, which the trial court granted, thereby rendering declaratory judgment that the plaintiff health care providers were "qualified health care providers" under the MMA for the time period at issue and ordering the PCF Board to report them as "qualified health care providers" for the time period at issue. It is from this judgment that the PCF Board has appealed, contending that the trial court erred in finding that the plaintiff health care providers were PCF qualified for the time period October 19, 2001 through January 11, 2002, where the annual renewal surcharge for these health care providers was due on October 19, 2001, but was not received by the Oversight Board until January 11, 2002.

DISCUSSION
The MMA confers upon qualified health care providers two major advantages in actions against them for malpractice. Bennett v. Krupkin, XXXX-XXXX (La.App. 1st Cir.3/28/02), 814 So.2d 681, 685, writ denied, XXXX-XXXX (La.6/21/02), 819 So.2d 338. First, the liability of a qualified health care provider for all injuries or death for any one patient may not exceed $100,000, and the total amount recoverable from all defendants (including the PCF) for all malpractice claims for injuries or death for any one patient, exclusive of future medical care and related benefits, may not exceed $500,000, plus interest and costs. Id.; La. R.S. 40:1299.42(B). Second, no action for malpractice against a qualified health care provider or his insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits *93 of the complaint, unless the parties agree to waive this requirement. Id.; La. R.S. 40:1299.47(A).
Health care providers may take advantage of these benefits only if they "qualify" under the MMA by meeting certain statutory requirements set forth in La. R.S. 40:1299.42(A). These benefits are bestowed on health care providers for as long as they remain qualified under the Act. Id.; La. R.S. 40:1299.45(A).
Louisiana Revised Statute 40:1299.42 sets forth the requirements for a health care provider seeking to qualify under the MMA, and it provides, in pertinent part, as follows:
A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to La. R.S. 40:1299.44.
(3) For self insureds, qualification shall be effective upon proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
Louisiana Revised Statute 40:1299.42(E), governing methods of establishing proof of financial responsibility, provides that financial responsibility is established by filing with the PCF Board proof that the health care provider is insured by a malpractice liability insurance policy "with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider." Thus, once a health care provider has qualified under the MMA, the health care provider's qualification under the MMA is concurrent with the coverage under the underlying insurance policy, i.e., qualification takes effect and follows the same form as the policy of insurance. Bennett, 814 So.2d at 686-87.
With regard to the collection of surcharges, where proof of financial responsibility is established through an insurance policy, the responsibility for collecting the proper annual surcharge lies with the insurer. La. R.S. 40:1299.44(A)(2)(a)[3] & (A)(2)(d)[4]. The insurer must then remit the collected surcharge to the PCF within forty-five days of the payment of the premium. La. R.S. 40:1299.44(A)(3)(a) and (b).[5] If the insurer fails to remit the appropriate *94 surcharge, the PCF is authorized to assess a penalty and collect attorney's fees against the insurer or to pursue legal remedies against the insurer. La. R.S. 40:1299.44(A)(4).[6]
Additionally, La. R.S. 40:1299.44(D)(3) provides that: "The [PCF] board shall have authority, . . . to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority and discharge the responsibilities conferred and imposed on the board by this [MMA]." In accordance with this provision, the PCF Board has adopted administrative rules, which are set forth in Title 37 of the Louisiana Administrative Code, Chapters 1-17. Included therein are regulations regarding the expiration of PCF coverage and the payment of the surcharge. During the time period at issue in this case, La. Admin. Code 37:III.517 provided, in part, with regard to the expiration of PCF coverage:
A. Enrollment with the fund terminates:
1. as to a health care provider evidencing financial responsibility by certification of insurance pursuant to § 505 of these rules, on and as of the effective date and time of termination of the policy period of the health care provider's professional liability insurance coverage.[7]
With regard to the regulation of the collection of surcharges from health care providers who provide proof of financial responsibility through a malpractice liability insurance policy, La. Admin. Code 37:III.711 provides, in part:
A. Applicable surcharges for enrollment with the fund shall be collected on behalf of the fund by commercial professional health care liability insurance companies and approved self-insurance trust funds from insured health care providers electing to enroll with the fund. Such surcharges shall be collected by such insurers and funds at the same time and on the same basis as such insurers' collection of premiums from such insureds. Surcharges collected by commercial insurance underwriters and funds on behalf of the fund shall be due and payable and remitted to the fund by commercial insurance underwriters and funds within 45 days from the date on which such surcharges are collected from any insured, whether such surcharges are collected from the providers early, timely, or late. Remittance of surcharges to the fund shall be made in such form and accompanied by records in such forms or on such forms as may be prescribed by the executive director so as to provide for proper accounting of remitted surcharges and the identity *95 and class of health care providers on whose behalf such surcharges are remitted. Commercial professional health care providers liability insurance companies, commercial insurance underwriters, and approved self-insurance trust funds remitting surcharges to the fund shall certify to the fund, at the time of remitting such surcharge to the fund, the date that the surcharges were collected by them from the health care providers. The payment of surcharges by an approved self-insurance trust that does not collect premiums from insureds will be governed by § 713 hereof.
After reviewing the relevant provisions of the MMA, as well as the administrative rules promulgated by the PCF Board, we find no provision that authorizes the PCF to terminate or otherwise restrict the insured health care provider's qualification under the MMA if an untimely or late surcharge is collected or even if a surcharge is not collected by the insurer. Furthermore, the statutes and regulations promulgated in furtherance of the MMA make it clear that any dispute over the computation of or collection of the surcharge is to be resolved between the PCF and the insurer. See La. R.S. 40:1299.44(A)(3)(b) and Bennett, 814 So.2d at 687.
In Brown v. St. Paul Fire & Marine Ins. Co., 31,777 (La.App. 2nd Cir.3/31/99), 731 So.2d 953, 955, writ denied, 99-1211 (La.6/4/99), 744 So.2d 634, the Second Circuit Court of Appeal noted that it is the statutory responsibility of the insurance carrier to collect the premium, assess the surcharge, and remit it to the PCF. If the insurer fails to do this, the PCF Board has specific remedies against the insurer under La. R.S. 40:1299.44(A)(3)(b)[8]  it does not defeat the health care provider's coverage under the PCF. Id. Furthermore, that court noted that there was no provision under the MMA which authorized the PCF to collect surcharges directly from a health care provider, unless the health care provider was self-insured. Id.
Additionally, in In Re Medical Review Proceedings, Jack Catalanotto v. Lifemark Hospitals of Louisiana, Inc., 94-403 (La.App. 5th Cir.12/14/94), 648 So.2d 970, 972, the Fifth Circuit Court of Appeal noted that the MMA, in particular, La. R.S. 40:1299.44(A)(2)(d)[9] and La. R.S. 40:1299.44(A)(3)(a),[10] "suggest that for those health care providers who maintain underlying medical malpractice insurance, the annual surcharge may be paid late without a gap in coverage of the Fund if the insurer providing the underlying coverage allows the premiums of its policy to be paid after the date due."
Other than health care providers who are self-insured, all that a health care provider must do in order to be qualified is provide proof of financial responsibility (i.e., provide proof of malpractice liability insurance) and pay the PCF surcharge assessed by the insurer. There is no dispute in this case that the health care providers have a malpractice liability insurance policy with St. Paul, which included continued coverage during the time period at issue. With regard to the payment of the PCF surcharge, it was the statutory responsibility of the health care providers' insurance carrier, St. Paul, to collect the premium, assess the surcharge, and remit it to the PCF. While the agent for St. Paul, IU, failed to timely invoice the health care providers for their PCF surcharge, we find that the plaintiff health care providers fulfilled *96 their statutory duty to pay the entire twelve month surcharge, and did so approximately three weeks after being assessed for it by St. Paul. Moreover, had the health care providers submitted the PCF surcharge directly to the PCF Board on or before October 19, 2001, without submitting it through their insurer, the PCF Board would have been statutorily precluded from accepting the funds directly, as the plaintiff health care providers were not self-insured.
Additionally, neither the MMA nor the rules promulgated by the PCF Board provide for a lapse in coverage as a result of untimely payments. Rather, at the time period at issue in this case, the very rules promulgated by the PCF Board made termination of PCF coverage contingent solely upon termination of the underlying malpractice insurance policy. As noted above, in this case there was no termination of the underlying malpractice insurance policy from St. Paul. While a subsequent administrative rule[11] promulgated by the PCF purportedly provides for termination of coverage for failure to pay the PCF surcharge to the insurer on or before thirty days following the expiration of the prior enrollment period, this rule was not in effect during the time period at issue and is, thus, inapplicable to this case. During the time period at issue, there was no provision in either the MMA or the administrative rules promulgated by the PCF that would provide for a lapse in PCF coverage as a result of untimely payment of the surcharge. Had the Legislature intended that a certain time limit or grace period be attached to the payment of the PCF surcharge, it could have said as much in the MMA.
Therefore, since the health care providers have at all times been insured by St. Paul, and since St. Paul tendered payment of the healthcare provider's PCF surcharge to the PCF within 45 days of payment of the premium to St. Paul as required by the MMA, we find that there has been no lapse in PCF coverage. Accordingly, we affirm the summary judgment granted in favor of the plaintiff health care providers, finding them to be qualified health care providers under the MMA for the time period of October 19, 2001 through January 11, 2002, and ordering the PCF Board to report them as qualified health care providers for this time period.
All costs of this appeal in the amount of $442.24 are assessed against the appellant, Louisiana Patient's Compensation Fund Oversight Board.
AFFIRMED.
NOTES
[1] All references to the provisions of the MMA in this opinion are to the content of such provisions for the time period at issue.
[2] According to the records of the PCF Board, Dr. McCarthy has been a qualified health care provider under the MMA since October 19, 1984; Dr. Longcope has been a qualified health care provider under the MMA since July 22, 1999; and Dr. Griffin has been a qualified healthcare provider under the MMA since October 19, 1984.
[3] La. R.S. 40:1299.44(A)(2)(a) provides: "In order to provide monies for the fund, an annual surcharge shall be levied on all health care providers in Louisiana qualified under the provisions of this Part."
[4] La. R.S. 40:1299.44(A)(2)(d) provides: "The surcharge shall be collected on the same basis as premiums by each insurer, the risk manager, and surplus line agent."
[5] La. R.S. 40:1299.44(A)(3) provides:

(a) Such surcharge shall be due and payable to the patient's compensation fund within forty-five days after the premiums for malpractice liability insurance have been received by the agent of the insurer, risk manager, or surplus line agent from the health care provider in Louisiana.
(b) It shall be the duty of the insurer, risk manager, or surplus line agent to remit the surcharge to the patient's compensation fund within forty-five days of the date of payment by the health care provider. Failure of the insurer, risk manager, or surplus line agent to remit payment within forty-five days shall subject the insurer, risk manager, or surplus line agent to a penalty of twelve percent of the annual surcharge and all reasonable attorney's fees. Upon the failure of the insurer, risk manager, or surplus line agent to remit as provided herein, the board is authorized to institute legal proceedings to collect the surcharge, together with penalties, legal interest, and attorney's fees.
[6] La. R.S. 40:1299.44(A)(4) provides: "If the annual premium surcharge is not paid within the time limited above, upon written notice of such nonpayment given by the board concurrently to the commissioner of insurance and the insurer, risk manager, or surplus line agent, the certificate of authority of the insurer, risk manager, and surplus line agent shall be suspended until the annual premium surcharge is paid."
[7] This administrative rule was amended and re-promulgated in April 2003 to provide

A. Enrollment with the fund expires:
1. as to a health care provider evidencing financial responsibility by certification of insurance pursuant to § 505 of these Rules, on and as of:
a. the effective date and time of termination of the policy period of the health care provider's professional liability insurance coverage; or
b. the last day of the applicable period for which the prior annual surcharge applied in the event that the annual surcharge for renewal coverage is not paid by the health care provider to the insurer on or before 30 days following the expiration of the enrollment period.
[8] For text, see footnote 5.
[9] For text, see footnote 4.
[10] For text, see footnote 5.
[11] For text, see footnote 7.