STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-782

DR. KEVIN WILLIAMS

VERSUS

LOUISIANA PATIENTS' COMPENSATION FUND OVERSIGHT BOARD

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20045586
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Marc W. Judice**
**Judice & Adley**
**P. O. Box 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**Counsel for Plaintiff/Appellee:**
      **Dr. Kevin Williams, DDS**

**Larry M. Roedel**
**David A. Woolridge, Jr.**
**Carlton Jones**
**Roedel, Parsons, Koch, Blache, Balhoff & McCollister, A.L.C.**
**8440 Jefferson Hwy, Ste 301**
**Baton Rouge, LA 70809-7652**
**(225) 929-7033**
**Counsel for Defendant/Appellant:**
     **Louisiana Patients' Compensation Fund Oversight Board**

GREMILLION, Judge.

A medical malpractice claim was filed against the plaintiff, Dr. Kevin Williams, D.D.S., by Anita Washington, on behalf of her minor son, Curtis. Although Dr. Williams was enrolled in the Patient's Healthcare Compensation Fund (the Fund), the defendant, the Louisiana Patients' Compensation Fund Oversight Board (the Board), determined that there was a gap in his enrollment due to the untimely remittance of his annual Patient's Compensation Fund surcharge. Thereafter, Dr. Williams filed suit against the Board seeking a declaratory judgment that he was enrolled in the fund and that no lapse existed in his enrollment. Judgment was granted in his favor and the Board appealed. For the following reasons, we affirm.

### FACTS

Curtis, Washington's sixteen-year-old son, was seen by Dr. Williams for a complaint of swollen glands in January 2002. Washington informed Dr. Williams that she felt Curtis might have cancer in his mouth and requested that he perform a biopsy. However, Dr. Williams advised her that Curtis was only suffering from tartar buildup and extracted his tooth. He did not perform a biopsy. Curtis remained under Dr. Williams care through March 2002. Thereafter, he was diagnosed as having a cancerous tumor in his mouth, which had spread to his neck. After undergoing surgery, chemotherapy, and radiation treatment, Curtis passed away in May 2003.

Dr. Williams was enrolled as a qualified health care provider with the Fund through his provision of proof of financial responsibility, via a $100,000/$300,000 medical malpractice policy from Continental Casualty Company, and payment of his annual surcharge, as determined by the Board. His coverage ran

1

from June 16, 2001 through June 16, 2002. Thereafter, the Board received a Certificate of Insurance for Dr. Williams from Continental Casualty on September 19, 2002, notifying it of his policy renewal through June 16, 2003. However, Dr. Williams did not submit his $533 surcharge payment until August 23, 2002, approximately two months after his renewal date. Thereafter, the Board reactivated his enrollment in the Fund, this time with an effective date of August 23, 2002, and refunded a portion of the surcharge back to him after prorating the amount. This resulted to a gap in his enrollment with the Fund, from June 16, 2002 through August 23, 2002.

On August 2, 2002, Washington filed a medical malpractice claim with the Fund, against Dr. Williams. As this fell within the gap created by his late surcharge payment, the Board notified Washington that Dr. Williams was not a qualified health care provider enrolled in the Fund at the time her claim was filed. Washington then filed suit against Dr. Williams in the Civil District Court for the Parish of Orleans on January 2, 2003. As a result, Dr. Williams filed the instant Petition for Declaratory Judgment against the Board in the Fifteenth Judicial District Court seeking a judgment stating that there was no lapse in his enrollment in the Fund. Following a hearing on the matter, the trial court rendered judgment in favor of Dr. Williams finding that no gap existed in his enrollment and ordered the Board to issue a Certificate of Enrollment stating such. This suspensive appeal by the Board followed.

## ISSUE

On appeal, the Board argues that the trial court erred in finding that no gap existed in Dr. Williams' enrollment with the Fund despite his failure to timely submit his annual surcharge payment to Continental Casualty within thirty days of his renewal date, as required by La.R.S. 40:1299.42(A) and La.Admin.Code tit. 37:III, § 517(A)(1)(b).

## MEDICAL MALPRACTICE ACT

The Medical Malpractice Act confers two advantages to qualified health care providers, as explained in *Bennett v. Krupkin*, 00-0023, pp. 6-7 (La.App. 1 Cir. 3/28/02), 814 So.2d 681, 685-86, *writ denied*, 02-1208 (La. 6/21/02), 819 So.2d 338:

> First, the liability of a qualified health care provider for all malpractice claims for injuries to or death of any one patient may not exceed $100,000, and the total amount recoverable from all defendants and the PCF for all malpractice claims for injuries to or death of any one patient, exclusive of future medical care and related benefits, may not exceed $500,000, plus interest and costs. LSA-R.S. 40:1299.42(B). Second, as stated above, no action for malpractice against a qualified health care provider or his insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement. LSA-R.S. 40:1299.47(A); *Dunn [v. Bryant]*, 96-1765[, ] pp. 5-6 [(La.App. 1 Cir. 9/9/97)], 701 So.2d [696,] 699.
>
> Health care providers may take advantage of these benefits only if they qualify under the Act by meeting certain statutory requirements as set forth in LSA-R.S. 40:1299.42(A). These benefits are bestowed on health care providers as long as they remain qualified under the Act. LSA-R.S. 40:1299.45(A). The burden is on a defendant to prove prematurity and initial immunity from suit as a qualified health care provider under the Medial Malpractice Act. *Dunn*, 96-1765 at p. 6, 701 So.2d at 699.

Pursuant to La.R.S. 40:1299.42(A), a qualified health care provider is one who "(1) [files] with the board proof of financial responsibility as provided by

3

Subsection E of this Section," and "(2) [pays] the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44." Qualification of a self-insured is effective "upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge." La.R.S. 40:1299.42(A)(3).

Proof of financial responsibility is satisfied by filing with the Board proof of coverage by a medical malpractice policy in the amount of $100,000 per claim, "with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider," or by depositing $125,000 with the Board if the health care provider is self-insured. La.R.S. 40:1299.42(E)(1).

Pursuant to La.R.S. 40:1299.44, the Fund is supported by annual surcharges levied against all qualified health care providers. La.R.S. 40:1299.44(A)(2)(a). These surcharges are collected in the same manner as premiums and are payable to the Fund within forty-five days after receipt of the premium by the insurer from the health care provider. La.R.S. 40:1299.44(A)(2)(d) and (3)(a). La.R.S. 40:1299.44(A)(3)(b) provides:

> It shall be the duty of the insurer, risk manager, or surplus line agent to remit the surcharge to the patient's compensation fund within forty-five days of the date of payment by the health care provider. Failure of the insurer, risk manager, or surplus line agent to remit payment within forty-five days shall subject the insurer, risk manager, or surplus line agent to a penalty of twelve percent of the annual surcharge and all reasonable attorney's fees. Upon the failure of the insurer, risk manager, or surplus line agent to remit as provided herein, the board is authorized to institute legal proceedings to collect the surcharge, together with penalties, legal interest, and attorney's fees.

4

In order to effectuate the provisions of the Medical Malpractice Act, the Board also has the authority to adopt and promulgate necessary rules, regulations, and standards. La.R.S. 40:1299.44(D)(3). In furtherance of this aim, the Board promulgated La.Admin.Code tit. 37:III with regard to enrollment in the Fund. At the time of this incident, Section 517 provided that enrollment in the Fund by a non-self-insured qualified health care provider terminated "on and as of the effective date and time of termination of the policy period of the health care provider's professional liability insurance coverage." Enrollment terminated as to a self-insured qualified health provider at "11:59 p.m., central standard time, at the conclusion of one year from the date on which enrollment became effective." La.Admin.Code tit. 37:III, § 517(A)(1) and (2).

The Board has further promulgated rules with regard to the payment of surcharges to the Fund. La.Admin.Code tit. 37:III, § 711 provides:

> A. Applicable surcharges for enrollment with the fund shall be collected on behalf of the fund by commercial professional health care liability insurance companies and approved self-insurance trust funds from insured health care providers electing to enroll with the fund. Such surcharges shall be collected by such insurers and funds at the same time and on the same basis as such insurers' collection of premiums from such insureds. Surcharges collected by commercial insurance underwriters and funds on behalf of the fund shall be due and payable and remitted to the fund by commercial insurance underwriters and funds within 45 days from the date on which such surcharges are collected from any insured, whether such surcharges are collected from the providers early, timely, or late. Remittance of surcharges to the fund shall be made in such form and accompanied by records in such forms or on such forms as may be prescribed by the executive director so as to provide for proper accounting of remitted surcharges and the identity and class of health care providers on whose behalf such surcharges are remitted. Commercial professional health care providers liability insurance companies, commercial insurance underwriters, and approved self-insurance trust funds remitting surcharges to the fund shall certify to the fund, at the time of remitting such surcharge to the fund, the date

5

that the surcharges were collected by them from the health care providers. The payment of surcharges by an approved self-insurance trust that does not collect premiums from insureds will be governed by §713 hereof.

B. Failure of the commercial professional health care liability insurers, commercial insurance underwriters, and approved self-insurance trust funds to remit payment within 45 days of collecting such annual surcharge shall subject the commercial professional liability insurers, commercial insurance underwriters, and approved self-insurance trust funds to a penalty of 12 percent of the annual surcharge and all reasonable attorney's fees. Upon the failure of the commercial professional health care liability insurers, commercial insurance underwriters and approved self-insurance trust funds to remit as provided in §711, the board may institute legal proceedings to collect the surcharge, together with penalties, legal interest, and attorney's fees.

. . . .

D. It is the purpose of §711 that insurance companies remit surcharges collected from their providers on behalf of the fund to the fund timely. The provisions of §711 are not intended to affect the effective date of fund coverage.

A recent First Circuit Court of Appeal opinion dealt with the effect caused by a late surcharge payment. In *Griffin v. Patient's Compensation Fund Oversight Board*, 04-613, 04-614 (La.App. 1 Cir. 3/24/05), 907 So.2d 90, the Board declared a lapse in the qualified health care provider's enrollment with the Fund as a result of a late surcharge payment. As in this instance, a medical malpractice claim was filed against the qualified health care provider during the lapsed period of time; thus, the Board found that he was not entitled to the protection of the Medical Malpractice Act. The qualified health care provider sought and obtained a judgment declaring that his enrollment in the Fund had not lapsed as a result of the untimely surcharge payment.

6

On appeal, the first circuit, after reviewing the pertinent statutes, administrative rules, and jurisprudence, held that the Fund was without authority to:

> [T]erminate or otherwise restrict the insured health care provider's qualification under the MMA if an untimely or late surcharge is collected or even if a surcharge is not collected by the insurer. Furthermore, the statutes and regulations promulgated in furtherance of the MMA make it clear that any dispute over the computation of or collection of the surcharge is to be resolved between the PCF and the insurer. *See* La. R.S. 40:1299.44(A)(3)(b) and *Bennett [v. Krupkin*, 00-0023 (La.App. 1 Cir. 3/28/02)], 814 So.2d 681,] 687.

*Id.* at 96. As La.Admin.Code tit. 37:III, § 517 hinged termination in the Fund upon the termination of the underlying medical malpractice insurance policy, the court held that no lapse in the qualified health care provider's enrollment occurred when the underlying medical malpractice insurance policy continued without interruption, even if the surcharge was paid late. *See also Bennett*, 814 So.2d 681; *Brown v. St. Paul Fire & Marine Ins. Co.*, 31,777 (La.App. 2 Cir. 3/31/99), 731 So.2d 953, *writ denied*, 99-1211 (La. 6/4/99), 744 So.2d 634; *In re Medical Review Proceedings, Jack Catalanotto v. Lifemark Hosps. of Louisiana, Inc.*, 94-403 (La.App. 5 Cir. 12/14/94), 648 So.2d 970.

We agree with our colleagues' interpretation of the rules pertaining to the enrollment and termination of a qualified health care provider with the Fund. We further note that effective March 2003, Section 517 was amended to provide that the enrollment of qualified health care provider in the fund, who is not self-insured, terminates on (1) "the effective date and time of termination of the policy period of the health care provider's professional liability insurance coverage," or (2) "*the last day of the applicable period for which the prior annual surcharge applied in the event that the annual surcharge for renewal coverage is not paid by the health care provider to the insurer on or before 30 days following the expiration of the*

7

*enrollment period.*" (Emphasis added). However, as this amendment is substantive in nature, it only applies prospectively from March 2003. *Landry v. Avondale Indus., Inc.*, 03-0719, 03-0993, 03-1002 (La. 12/3/03), 864 So.2d 117.

Accordingly, we find that the Board was proscribed by its own rules from declaring that a lapse existed in Dr. Williams' enrollment with the Fund from June 16 through August 23, 2002. As his medical malpractice insurance policy with Continental Casualty continued during this time period, as evidenced by the coverage date of June 16, 2002 through June 16, 2003 listed on the Certificate of Insurance forwarded to the Board, so did his enrollment. Based on this determination, we find no error in the trial court's judgment in favor of Dr. Williams.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the defendant-appellant, the Louisiana Patients' Compensation Fund Oversight Board, in the amount of $496.16.

**AFFIRMED.**