STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

CW06-00131

DARVIN KERRY

VERSUS

STATE OF LOUISIANA, THROUGH BOARD OF
SUPERVISORS OF LOUISIANA STATE UNIVERSITY, ET AL.

**********
WRIT APPLICATION FROM
THE NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 222,417
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Glenn B. Gremillion, Billy H. Ezell, and J. David Painter, Judges.

REVERSED.

James D. Caldwell
4321 Youree Drive, Suite 400
Shreveport, LA 71105-3347
(318) 865-5626
Counsel For Plaintiff/Respondent
    Darvin Kerry

Charles C. Foti, Jr.
Attorney General
James E. Calhoun
Asst. Attorney General
P. O. Box 1710
Alexandria, LA 71309
(318) 487-5944
Counsel For Defendant/Relator
    State of Louisiana, through the Board
    of Supervisors, LSU Health Sciences Center
    Health Care Services Division

GREMILLION, Judge.

In this writ application, the defendant, the State of Louisiana, through the Board of Supervisors of Louisiana State University, Health Sciences Center-Health Care Services, Huey P. Long Medical Center (the State), urges that the wrongful death claim of the plaintiff, Darvin Kerry, is prematurely before the court. We agree and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

This writ arises out of a medical malpractice claim that was originally filed by the plaintiff's wife, Robbie Kerry, who is now deceased. Robbie died on March, 17, 2005. On July 22, 2005, the medical review panel convened and found that the State failed to meet the appropriate standard of care when Robbie was admitted into the hospital on March 27, 2002. On October 26, 2005, Darvin filed both survival and wrongful death actions. The State filed an Exception of Prematurity arguing that the wrongful death claim was premature because Robbie died during the pendency of the proceedings. Following a hearing in December 2005, the trial court denied the exception. The State applied for writs to this court to decide this issue.

## DISCUSSION

Louisiana Revised Statute 40:1299.39.1(A)(1)(a) states in pertinent part, "All malpractice claims against the state, its agencies, or other persons covered by this Part . . . shall be reviewed by a state medical review panel[.]" Louisiana Revised Statute 40:1299.39.1(B)(1)(a)(i) goes on to say, "No action against the state, its agencies, or a person covered by this Part, or his insurer, may be commenced in any

1

court before the claimant's complaint has been presented to a state medical review panel established pursuant to this Section." In *Williamson v. Hospital Service District No. 1 of Jefferson*, 04-0451, p. 4 (La. 12/1/04), 888 So.2d 782, 785, the supreme court discussed the use of a dilatory exception of prematurity in medical malpractice cases:

> The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination. *Spradlin v. Acadia–St. Landry Medical Foundation,* 98-1977 (La.2/29/00), 758 So.2d 116; *see also* Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 21-3(f) (1996). An action is premature when it is brought before the right to enforce it has accrued. La.Code. [sic] Civ. Proc. art. 423. Under the Medical Malpractice Act, a medical malpractice claim against a [public] qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La.Rev.Stat. 40:1299.47 A. The burden of proving prematurity is on the exceptor, in this case the defendant health care provider; therefore the defendant must show that it is entitled to a medical review panel. *Hidalgo v. Wilson Certified Exp. Inc.,* 94-1322 (La.App. 1 Cir. 5/14/96), 676 So.2d 114, 117; *Bennett v. Krupkin*, 00-0023 (La.App. 1 Cir. 3/28/02); 814 So.2d 681, 685-86.

Robbie's death certificate lists septicemia due to PEG tube site cellulitis as the cause of her death. The State urges that the medical review panel's decision was limited to the finding that it was negligent in causing her brain damage. The State argues that the medical review panel did not decide whether it breached the standard of care pertaining to the septicemia and that this issue must be presented to the medical review panel.

The State further characterizes the issue as whether Darvin's wrongful death claim is a separate cause of action from the survival action that must be presented to the medical review panel. It is true that wrongful death and survival actions are separate and distinct claims that can arise from a common tort, but there

2

can be instances where a second tortious act occurs in the interim. This case presents an issue of first impression of whether or not Robbie's death from septicemia requires a medical review panel to convene to determine if the septicemia was a negligent act or if it arose out of the original act which the medical review panel has already deemed was a derogation of the standard of care. We do not view the issue as separate claims under the medical malpractice act necessarily because survival and wrongful death actions are two separate actions. There are cases in which there would be little dispute that both the survival and wrongful death actions arose from the same act of malpractice. Rather, we view the issue in this case as whether there exists two separate injuries resulting from two different acts, i.e. 1) the brain damage which the medical review panel has determined was malpractice and, 2) death from infection of the PEG tube.

We view Robbie's death from septicemia as a separate injury that requires an expert opinion from the medical review panel as to whether or not it was malpractice. In *Batson v. South Louisiana Medical Center*, 99-0232, p.6 (La. 11/19/99), 750 So.2d 949, 954, the supreme court stated:

> It seems elementary that, but for contracting sepsis, [the plaintiff] probably would not have developed the decubitus ulcers and the flexion contractures. In fact, but for [the plaintiff] having a bleeding ulcer, she would not have been admitted to the hospital at all and therefore, would probably not have developed sepsis. The "but for" analysis can continue infinitely. However, the medical testimony is clear: sepsis is not the direct cause of flexion contractures or decubitus ulcers.

Although we do not have any expert testimony before us, it would appear that septicemia at a PEG tube site does not directly result from a brain injury. Accordingly, we cannot say that the PEG tube infection "arose" from the original act

3

of malpractice.  Although we regret prolonging the plaintiff's case any further, we feel it is necessary that the original medical review panel consisting of the same members be convened once again to determine if the infection at the PEG tube site constituted negligence.

## CONCLUSION

The judgment of the trial court denying the defendant-appellant's Exception of Prematurity is reversed.  The plaintiff-appellee must submit his wrongful death claim due to his wife's death from septicemia to the original medical review panel.  All costs of this appeal are assessed against Darvin Kerry.

**REVERSED.**