McCLENDON, J.,
concurs, and assigns reasons.
hAs a general rule, a motion for summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. Eager v. Bourgeois, 06-0322, p. 6 (La.App. 1 Cir. 12/28/06), 951 So.2d 330, 333; Sanders v. Ashland Oil, Inc., 96-1751, pp. 6-7 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035. If the real issue in this matter, as suggested by the majority, is whether Dr. LaMartina intended to “permanently retire,” summary judgment would be inappropriate, as same would require us to analyze Dr. LaMarti-na’s intent at the time that he retired. However, because I believe that under the facts of this case, there is no genuine issue of material fact as to whether Dr. LaMar-tina is a qualified health care provider, summary judgment was correctly granted.
Once a health care provider has qualified under the Medical Malpractice Act, the health care provider’s qualification under the Act is concurrent with the coverage under the underlying insurance policy, i.e., | ^qualification takes effect and follows the same form as the policy of insurance. Bennett v. Krupkin, 00-0023, p. 8 (La.App. 1 Cir. 3/28/02), 814 So.2d 681, 686-87. In this matter, there is no dispute that Dr. LaMartina was qualified under the Act prior to and at the time of the alleged malpractice herein. Upon his “retirement,” Dr. LaMartina purchased an extended reporting endorsement to his professional liability insurance policy for claims arising out of his practice prior to his retirement but reported thereafter. Because of his years of practice with the same insurer, both the premium and surcharge were noted as waived by said insurer.
In Bennett, 00-0023 at pp. 9-10, 814 So.2d at 687, this court stated:
*255 Moreover, with regard to the collection of surcharges, the statutes make clear that where proof of financial responsibility is established through an insurance policy, the responsibility for collecting the proper annual surcharge lies with the insurer. LSA-R.S. 40:1299.44(A)(2)(a) & (A)(2)(d). The insurer must then remit the surcharge collected to the Fund within forty-five days of the payment of the premium. LSA-R.S. 40:1299.44(A)(3)(a) & (b). The statutes further provide that if the insurer fails to remit the appropriate surcharge, the Fund is authorized to assess a penalty and collect attorney’s fees against the insurer or to pursue legal remedies against the insurer. LSA-R.S. 40:1299.44(A)(3)(a) & (b) and 40:1299.44(A)(4). There is simply no provision in the Act authorizing the Oversight Board to terminate or otherwise restrict the insured health care provider’s qualification under the Act if an improper surcharge is collected by the insurer. Thus, any dispute over the actuarial computation of the surcharge or collection of the appropriate surcharge is to be resolved between the Fund and the insurer.
Therefore, based on the holding in Bennett, the waiver of the surcharge had no effect on Dr. LaMartina’s qualification under the Act. Rather, any remedy to which the PCF might be entitled would be against the insurer, St. Paul Guardian Insurance Company.