11 JOHN C. BOUTALL, Judge pro tem.
Defendants, Lifemark Hospitals of Louisiana, Inc., d/b/a St. Jude Medical Center and M. Lizaro (hereinafter “St. Jude”), appeal from a denial of its exception of prematurity. We reverse.
The sole issue on this appeal is whether St. Jude’s untimely payment of its renewal surcharge to the Louisiana Patient’s Compensation Fund resulted in a “gap” in coverage.
The facts for the purposes of this appeal are not in dispute. On January 22, 1993, plaintiff underwent surgery at St. Jude Medical Center for the repair of an inguinal hernia. On or about January 27,1993, while still in the hospital and recuperating from the surgery, plaintiff, who was under the influence of Demerol, attempted to get out of his hospital bed. RHe fell and fractured his left hip. Plaintiff alleges that the negligence of defendants was the direct cause of the fall and the resultant damages.
On June 23, 1993, plaintiffs filed a “Complaint of Medical Malpractice and Request for Medical Review Panel” with the Louisiana Patient’s Compensation Fund (hereinafter “the Fund”). On July 9, 1993, the Fund refused the claim, asserting that there was a gap in coverage occasioned by St. Jude’s untimely payment. Plaintiffs subsequently initiated this action against St. Jude and its nurse. They filed an exception of prematurity, asserting that there was coverage. The trial court denied coverage and this appeal ensued.
In connection with the exception of prematurity, the following was established: St. Jude first became a member of the Fund on January 24, 1989 and is “qualified” as a self-insured health care provider. St. Jude has continuously maintained with the Fund a certificate of deposit in the amount of $124,-000.00 as proof of financial responsibility.
The annual surcharge renewal was due on or before January 24, 1993. The Fund sent out a sixty (60) day notice of payment to St. Jude on October 7, 1992, some 109 days before due date. The evidence does not indicate the Fund sent any follow-up notice and/or notice of cancellation to St. Jude. The Fund received St. Jude’s surcharge renewal on March 18, 1993. St. Jude tendered and the Fund accepted a full twelve month surcharge. Despite this, the Fund issued a Certificate of Enrollment stating the enrollment period is from March 18, 1993 to January 24, 1994. TheJsjFund[1] maintains that, because of the untimely payment of the surcharge, there is a “gap” in coverage from January 24, 1993 until March 18, 1993.
In Jones v. Crow, 633 So.2d 247, 250 (La.App. 1 Cir.1993), the court discussed the purpose of the Medical Malpractice Act:
*972 The purpose of the Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq., is to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patient’s Compensation Fund. As long as a health care provider remains qualified under the Act, the health care provider and his insurer are liable for malpractice only to the extent provided in the Act. LSA-R.S. 40:1299.45A; Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992). Moreover, all claims against health care providers covered by the Act are required to be reviewed by a medical review panel. LSA-R.S. 40:1299.47A(1). The burden is on a defendant to prove immunity from suit as a qualified health care provider under the Act. Goins v. Texas State Optical, Inc., 463 So.2d 743, 744 (La.App.4th Cir.1985).
In order to qualify as a health care provider under the Medical Malpractice Act, a health care provider must file proof of financial responsibility as described in La.R.S. 40:1299.42(E) and pay the annual Patient’s Compensation Fund surcharge levied on the health care provider in accordance with La. R.S. 40:1299.44. For self-insureds, like St. Jude, qualification under the Medical Malpractice Act is effective upon the commissioner’s acceptance of the proof of financial responsibility and his receipt of payment of the surcharge; for health care providers other than self-insureds, qualification is effective at the time the malpractice insurer ^accepts payment of the surcharge. Abate v. Healthcare International Inc., 560 So.2d 812, 816-7 (La.1990): Jones v. Crow, supra at p. 250.
In this case, there is no question as to St. Jude’s initial qualification for the Fund. It is not disputed that St. Jude initially “qualified and enrolled” in the Fund on January 24, 1989. Likewise, It is not disputed that St. Jude is currently “qualified.” Finally, it is not disputed that St. Jude has maintained at all times since its enrollment proof of financial responsibility with the Fund as an alternative to underlying medical malpractice insurance. The sole issue presented by this lawsuit is whether St. Jude was a “qualified health care provider” under the Act during the two months when the surcharge was overdue so as to require review by a medical review panel prior to the institution of a lawsuit, or did the untimely payment of a surcharge result in a “gap” in coverage under the Fund.
The requirements for coverage under the Medical Malpractice Act, namely proof of financial responsibility and payment of the annual surcharge, are treated differently within the statutes. Under La.R.S. 40:1299.45(A)(1)[2] malpractice coverage is granted only while the underlying insurance coverage remains in force, or, as in the case of self-insureds herein, while the security posted is in effect. However the Medical IsMalpractice Act, and more specifically, La.R.S. 40:1299.44(A)(2)(d) and 40:1299.44(A)(3)(a) suggest that for those health care providers who maintain underlying medical malpractice insurance, the annual surcharge may be paid late without a gap in coverage of the Fund if the insurer providing the underlying coverage allows the premiums of its policy to be paid after the date due.[3] We find no provision within the Medical Malpractice Act which regulates the untimely payment of the annual surcharge by a self-insured health care provider.
However, we do find some provisions in the Fund rules. La.R.S. 40:1299.44(D)(3) provides that “The [Patient’s Compensation *973 Fund Oversight] board shall have authority, ..., to adopt and promulgate such rules, regulations and standards as it may deem necessary or advisable to implement the authority and discharge the responsibilities conferred and imposed on the board by this [Medical Malpractice Act.] In accordance ■with this provision, the Patient’s Compensation Fund Oversight Board adopted a set of rules, LAC 37:III.Chapters 1-17. Section 107 provides:
|6§ 107. Purpose and Objective of Rules; Construction, Application
These rules are adopted and promulgated to ensure that the Patient’s Compensation Fund is organized, administered and operated on a financially and actuarially sound basis so as to achieve the purpose for which it was established, by providing that qualification for enrollment is based on sound and realistic standards of financial responsibility; that the fund and its surcharge rates are adequate for the risks assumed; that surcharges are timely collected; that surcharge rate filings are based on reasonably current and complete claims experience data; that actual and potential claims against the fund are timely reported; that reserves against claims are properly established; that the fund is properly defended against improper, unjustified and excessive claims; and that the fund is responsible and accountable to the patients for whose benefit it exists and to its enrolled health care providers. These rules shall be construed, interpreted and applied so as to achieve such purposes and objectives.
(Emphasis supplied).
To regulate the collection of surcharges from those health care providers who are self-insured, section 713 provides:
§ 713. Payment of Surcharges; Self-Insureds
A.Not less than 60 days prior to the termination of enrollment of a health care provider, the executive director shall cause each self-insured health care provider enrolled with the fund and each self-insured health care provider having been approved for enrollment with the fund, to receive a statement of surcharges due to the fund by the health care provider for enrollment with the fund during the succeeding enrollment year.
B. Surcharges due the fund by self-insured health care providers for enrollment with the fund for an enrollment year shall be due and payable to the fund prior to the effective date of the coverage, or 17renewal of coverage, to which the surcharge applies. Remittance of surcharges to the fund shall be made in such form and accompanied by records in such form or on such forms as may be prescribed by the executive director so as to provide for proper accounting of remitted surcharges and the identity and class of health care provider remitting surcharges.
C. Within 10 days following the date on which payment of surcharges is due hereunder by a health care provider, the executive director shall cause each self-insured health care provider having then failed to remit the surcharges to the fund for the succeeding year to receive by registered or certified mail, return receipt requested, a second statement of surcharges due the fund by the health care provider, together with notification that failure to remit such surcharges within 20 days thereafter will result in termination of enrollment with the fund.
D. Surcharges due and payable to the fund by self-insured health care providers shall bear interest at the legal rate specified by law from the date due until the date paid to the fund as to any portion of such surcharges which is not paid on or before the due date specified in Subsection B of this Section. In addition • to such interest, a penalty equal to 12 percent of the amount of any surcharge due and unpaid within before the first day of the year to which it applies, may be assessed against a self-insured health care provider.
E. In any action by the board, pursuant to R.S. 40:1299.44(a)(3), to collect a due and payable surcharge, and recover the interest and/or penalties provided for in this Section, the board may also recover reasonable attorney’s fees incurred by the fund and the board in connection with prosecution of such action. All amounts so *974 recovered by the board, inclusive of interest, penalties, and attorney’s fees, shall be remitted in full to the fund.[4] (Emphasis supplied).
| gPursuant to these rules, the Fund is obligated to send a statement of the amount of the surcharge 60 days prior to the due date of the surcharge. In addition, the Fund is to send a past due notice -within ten (10) days following the due date if the surcharge is not timely paid, with a notification that the health care provider shall have 20 days from the date of the past due notice to remit the surcharge or be terminated from the fund. The rules also clearly specify that the penalty for a late payment is 12% of the amount of the surcharge due, plus interest. Thus, it is clear that neither the Medical Malpractice Act or the rules promulgated by the Fund provide for a gap in coverage as a result of untimely payments.
In this case, the Fund cannot show that it provided the ten day past due notice with its warning that coverage would terminate if the payment was not made in twenty days. Furthermore, the Fund accepted the full twelve month surcharge amount tendered by St. Jude. We therefore find that, without fulfillment of the notice requirements and with acceptance of the entire amount of the surcharge including the two month period for which it is now alleged that there is no coverage, the Fund cannot now allege a gap as a result of the untimely payment of the surcharge when it violates the very rule it adopted to control the situation.
Plaintiffs herein rely on Abate v. Healthcare International Inc., supra in support of their contention that an untimely payment of the annual surcharge will result in a “gap” in coverage by the Fund. Abate dealt with Uthe issue of an initial enrollment into the Fund and is, therefore, distinguishable from this case.
We therefore conclude, under the circumstances of this case, namely, that St. Jude kept accurate proof of financial stability at all times, that the Fund failed to prove that it sent sufficient notice and that St. Jude tendered and the Fund accepted a twelve month surcharge, that the Fund cannot now allege a “gap” in coverage as a result of the untimely payment of the surcharge.
The Louisiana Patient’s Compensation Fund Oversight Board has filed a brief as amicus curiae, requesting that this Court “further elaborate guidelines regarding the issues herein under which the [Patient’s Compensation Fund Oversight] Board can effectively and legally manage and administer the Fund.” Such a task is better left to the legislature through amendment of the Medical Malpractice Act or to the Board itself through the power granted it by the legislature in La.R.S. 40:1299(D).
For the above discussed reasons, we hold that the trial judge erred in overruling defendants’ exception of prematurity.
Accordingly, the judgment of the trial court denying St. Jude’s exception of prematurity is reversed. Judgment is hereby entered granting defendant’s exception of prematurity; and dismissing plaintiffs case without prejudice. All costs of this appeal are assessed against the plaintiffs.
REVERSED.

. The Fund is not a party to this suit. It appears only as amicus curiae.

. La.R.S. 40:1299.45(A)(1) provides:
Only while malpractice liability insurance remains in force, or in the case of a self-insured health care provider, only while the security required by regulations of the board remains undiminished, are the health care provider and his insurer liable to a patient, or his representative, for malpractice to the extent and in the manner specified in this Part.

. La.R.S. 40:1299.44(A)(2)(d) states as follows:
(d) The surcharge shall be collected on the same basis as premiums by each insurer, the risk manager, and surplus line agent.
La.R.S. 40:1299.44(A)(3)(a) states as follows:
(3)(a) Such surcharge shall be due and payable to the patient's compensation fund within forty-five days after the premiums for malpractice liability insurance have been received by the agent of the insurer, risk manager, or surplus line agent from the health care provider in Louisiana.

. Section 713 was promulgated Februaiy, 1992. Subsequent to this suit, Section 713 was amended to repeal Sections C, D and E, effective April, 1994.