907 So.2d 185 (2005)
Alisa Armstrong HOLMES, Plaintiff-Appellant
v.
JEFFERSON PILOT FINANCIAL INSURANCE COMPANY, et al., Defendant-Appellee.
No. 39,721-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*186 Dale G. Cox, Shreveport, for Appellant.
James A. Mijalis, Shreveport, for Appellee.
Before WILLIAMS, STEWART and PEATROSS, JJ.
WILLIAMS, Judge.
The plaintiff, Alisa Holmes, appeals a judgment in favor of the defendants, Jefferson Pilot Financial Insurance Company and Jefferson Pilot Life Insurance Company ("Jefferson Pilot"). The trial court found that plaintiff's husband did not have life insurance coverage in effect on the date of his death. For the following reasons, we affirm.

FACTS
In May 2001, Alisa Holmes and Dennis Holmes met with Marcia Moss, an agent with Liberty Mutual, to discuss a life insurance policy for Dennis. While completing the application, Dennis informed Moss that he was diabetic. He paid the initial projected monthly premium of $47 and received a conditional receipt from Moss. A short time later, Dennis Holmes completed a required medical examination. When the test results indicated that his diabetes was in "poor control," Liberty Mutual declined to provide coverage. However, Moss told Holmes that a reinsurer was willing to provide life insurance at a much higher premium of $141.58 per month.
At that point, in an attempt to get a lower premium, Dennis Holmes contacted Clay Eaves, an agent for Jefferson Pilot and a customer of Holmes' auto body repair shop. On May 23, 2001, Dennis Holmes completed an application for $200,000 in life insurance benefits, with a rider providing $100,000 of coverage for Alisa. Dennis Holmes paid Eaves $200 for the first month's policy premium and signed a conditional receipt, which provided for the following conditions:

*187  A minimum advance payment equal to one month premium for the insurance applied for must be made.
 Any check given in payment must be honored when first presented to the bank.
 All medical examinations and tests required by the company's initial underwriting requirements must be completed and received at its home office/service office within 60 days from the completion of Part I of the application.
 If any person proposed for insurance dies by suicide or if the application or this receipt contains any material misrepresentations, then the company's liability under this receipt is limited to a refund of the premium paid.
 Each person proposed for insurance must be a risk insurable on the insurability date in accordance with the company's rules, limits and standards for the plan and the amount applied for without modification either as to plan, amount, riders, supplemental agreements and/or the rate of premium paid.
The receipt further provided that if "all conditions in this receipt have been fulfilled exactly, coverage under the policy applied for, subject to the amount limitations may begin on the insurability date, which is the latest of (a) the date of completion of Part I of the application, or (b) the date of completion of all medical examinations, tests and other evidence required by the company, or (c) the policy date, if any, requested in the application." Above the signature line for the "proposed insured," the receipt also stated that "I have read the terms of this conditional receipt. I understand that the insurance applied for will not be effective unless and until all conditions of this conditional receipt are met."
A scheduled medical examination was cancelled by Dennis Holmes, who wanted to try to improve his blood sugar level. On June 16, 2001, the decedent, Dennis Holmes, was seriously injured in a motorcycle accident. He died on June 20, 2001. The decedent had not undergone the medical examination at the time of his death. Jefferson Pilot later returned the $200 payment to Alisa Holmes.
Subsequently, Alisa Holmes submitted a demand for payment of life insurance benefits to Jefferson Pilot, which declined coverage on the grounds that the decedent had not satisfied all of the requirements of the conditional receipt. In addition, Jefferson Pilot reviewed decedent's medical records, which were received after his death, and concluded that he was not an insurable risk because his diabetes was "uncontrolled." The plaintiff, Alisa Holmes, filed this action against the defendants, Jefferson Pilot Financial Insurance Company and Jefferson Pilot Life Insurance Company, asserting a claim for life insurance proceeds.
After a trial, the district court issued written reasons for judgment finding that the conditional receipt was a contract subject to a suspensive condition, which could never be fulfilled due to the decedent's death prior to completion of the medical examination. The trial court rendered judgment in favor of the defendants. The plaintiff appeals the judgment.

DISCUSSION
In a number of assignments of error, the plaintiff contends the trial court erred in finding that she was not entitled to recover life insurance benefits from defendants upon the death of her husband. These assignments of error relate to the interpretation of the conditional receipt and *188 whether it provided any life insurance coverage for the decedent.
Contracts have the effect of law between the parties. LSA-C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and unambiguous, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. Words in a contract must be given their generally prevailing meaning. Technical terms must be given their technical meaning when the contract involves a technical matter. LSA-C.C. art. 2047.
In the present case, Clay Eaves testified that he met with decedent and his wife in May 2001 to discuss a variable life insurance policy, which allowed premium payments to be invested for a potential increase in policy proceeds. Eaves stated that he gave them both a chance to read the application documents before they signed, he accepted a $200 check for the projected monthly premium and gave them a conditional receipt. Eaves did not recall explaining the conditional receipt to decedent or plaintiff and did not know if they had read the documents in detail. Eaves testified that the policy illustration was generated by defendants as a projection of the rate of return available for investing a certain premium amount. He explained that questions about decedent's finances were meant to guard against a person seeking an inordinate amount of insurance coverage. Eaves stated that he told decedent about the need to take a medical exam, which included a blood test and urinalysis.
Henry Edmonston, the vice-president for underwriting at Jefferson Pilot, testified that he was involved with evaluating insurance applications and classifying risks. Edmonston stated that when an application was completed and an agent collected money, a conditional receipt was used to inform the applicant when he might be considered to have coverage. Edmonston testified that because the decedent did not undergo a medical examination he did not complete the condition requiring him to submit test results to defendants. Edmonston stated that another condition was that the applicant must be an insurable risk as determined by defendants' guidelines. He testified that defendants reviewed LSU medical records showing that decedent was treated for Type 2 diabetes and assessed the management of his condition by looking at his hemoglobin A1C level. Edmonston stated that because decedent's hemoglobin A1C levels of 11.1% or higher were considered poor or uncontrolled according to defendants' underwriting guidelines, decedent would not have been an insurable risk at the time. Edmonston testified that with a variable life insurance application like decedent's, the usual procedure was for the agent to gather all of the investment information in advance. Edmonston stated that decedent's benefit in paying the $200 and receiving the conditional receipt was that, if he were insurable, he would be covered from the date the medical exam was completed until the date the policy was delivered, whereas without the conditional receipt, coverage would be delayed until after the defendants evaluated the medical test results and received a premium payment.
The testimony of Eaves and Edmonston showed that the policy illustration presented to decedent provided an example of the potential rate of return for invested premiums and possible future cash value of the policy. The policy illustration is a 10-page document and at the bottom of each page is the statement: "THIS ILLUSTRATION IS NOT A POLICY CONTRACT." The illustration refers to hypothetical investment *189 rates of return and values for the decedent's projected premium payments. The "Variable Life Premium Allocation Form" lists various investment funds with a space for the applicant to indicate the percentage of premiums allocated to each fund selected. Edmonston stated that the company's practice was for the agent to gather all of the investment information at the time of the initial application.
Based on the nature of the above-described documents, the practice of having the applicant complete all of the paperwork at one time is reasonable for the mutual convenience of the parties. Thus, contrary to plaintiff's contention, the agent's act of gathering information from the decedent in connection with the insurance application does not mean that Jefferson Pilot was bound to provide coverage.
Plaintiff contends the trial court's finding of no coverage means that decedent did not receive any benefit from the $200 premium payment to Jefferson Pilot. By its terms, the conditional receipt provides "a limited amount of life insurance coverage, for a limited period of time, subject to the terms of this receipt." As previously noted, the conditional receipt states that if all of the listed conditions have been fulfilled coverage will be effective from the date which is the later of the completion of the application, completion of all medical exams, or the date requested by the applicant. Consequently, the conditional receipt would provide coverage for the interim period between the date of the medical exam and the delivery date of the policy for an applicant who had paid one month's projected premium and who was an insurable risk. Edmonston stated that otherwise, coverage would not begin until the date when the policy was issued and the premium collected. Thus, contrary to plaintiff's contention, the decedent did receive a benefit, although arguably of nominal value, in return for payment of the $200 premium.

Conditional Obligation
The plaintiff contends the trial court erred in finding that the conditional receipt was a contract subject to a suspensive condition. The plaintiff argues that once decedent completed the application and the defendants accepted the first month's payment, the conditional receipt constituted a binding insurance contract subject to a resolutory condition that decedent would be determined an uninsurable risk.
A conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. If the obligation may be immediately enforced, but will end when the uncertain event occurs, the condition is resolutory. LSA-C.C. art. 1767. An application for insurance constitutes a contractual offer and the insurance contract is not completed until such application or offer is accepted by the insurer, particularly where the application reserves the insurer's right to reject the applicant's coverage. Kieffer v. Southern United Life Insurance Co., 437 So.2d 919 (La.App. 2d Cir.1983); Sanders v. Hartford Life Insurance Co., 350 So.2d 945 (La.App. 2d Cir. 1977).
In support of her position, the plaintiff cites Welsh v. Paul Revere Life Ins. Co., 95-0954 (La.App. 4th Cir.11/30/95), 665 So.2d 142, a case that involved a "Receipt and Conditional Insuring Agreement," which provided in pertinent part:
Insurance Provided  If at least a minimum deposit is made, we will insure each person proposed for coverage in the Application who is an insurable risk *190 on the effective date. The insurance provided will:
* * *
(ii) Be exactly as requested in the Application for insurable risk A, or be reduced or modified according to our underwriting rules and practices for insurable risk B;
(iii) Continue until we notify you that the Application is accepted or filed;
In Welsh, supra, the court found that language in the conditional receipt was ambiguous, since it could be construed to provide insurance to the applicant until the insurer accepted or rejected the application and no receipt language excluded coverage where the applicant died in the interim period.
In contrast to the conditional receipt in this case, the receipt language quoted in Welsh does not specify that the applicant must complete a medical examination within 60 days of signing the application as a condition of insurance coverage. Whereas the receipt in Welsh suggested there was coverage in effect and continuing until the insurer gave notice of acceptance, here the conditional receipt language expressly provided that insurance coverage would not be effective until "all conditions of this receipt have been fulfilled exactly" by the decedent, including the medical exam. Additionally, decedent signed the receipt under a statement that he understood "the insurance applied for will not be effective unless and until all conditions of this Conditional Receipt are met."
We note that plaintiff's brief cites decisions of the supreme courts of Idaho and Connecticut holding that this type of conditional receipt was a binding contract providing immediate insurance coverage, subject to a condition that the company may determine that the applicant was uninsurable. See Toevs v. Western Farm Bureau Life Ins. Co., 94 Idaho 151, 483 P.2d 682 (1971); Simses v. North American Co. for Life & Health Ins., 175 Conn. 77, 394 A.2d 710 (1978). However, Louisiana courts apply the civil code articles regarding contract interpretation to insurance policies and conditional receipts. See Sanders, supra; Welsh, supra. Thus, in determining whether coverage is afforded by a particular receipt this court must consider the specific language used in the receipt. Consequently, we are not persuaded to apply a jurisprudential rule of another jurisdiction in reviewing the receipt at issue in this case.
After reviewing the record and considering the language of the conditional receipt, we cannot say the trial court erred in finding that the limited insurance coverage available under the conditional receipt was not in effect at the time of decedent's death because the decedent had not fulfilled all of the conditions contained in the receipt. The assignment of error lacks merit.

Evidentiary Issues
In five assignments of error, the plaintiff contends the trial court erred in excluding the testimony of plaintiff and Marcia Moss concerning their understanding of whether decedent was covered by the conditional receipt upon payment of the premium and in admitting Edmonston's testimony interpreting the receipt. Plaintiff argues that the conditional receipt should be construed to allow coverage because the receipt language is ambiguous.
Generally, the trial court is accorded discretion concerning the admission or exclusion of evidence. A court's decision to admit or exclude evidence will not be reversed absent an abuse of discretion. Holloway v. Midland Risk Insurance Co., 36,262 (La.App. 2d Cir.10/30/02), 832 So.2d 1004, writ denied, 02-3247 *191 (La.3/28/03), 840 So.2d 571. Testimonial evidence may not be admitted to negate or vary the contents of an act under private signature. LSA-C.C. art. 1848.
In this case, plaintiff sought to testify as to her understanding that decedent was covered by a life insurance policy when Eaves accepted the $200 payment. Plaintiff also sought to introduce the testimony of Marcia Moss stating her view, based upon her training and experience as an agent for Liberty Mutual and State Farm, that insurance coverage was bound upon the insurer's receipt of the first month's premium. The trial court excluded this testimony, but allowed plaintiff to present the evidence as an offer of proof. In response to plaintiff's objection to Edmonston's testimony concerning the conditional receipt, the court ruled that the witness could testify about his experience with the receipt. However, the court stated that in admitting the testimony it was not making a finding that the receipt language was ambiguous and was not overruling plaintiff's objection to any opinion by Edmonston about the document.
The record shows that the trial court was consistent in excluding witnesses' testimony regarding their understanding or opinion as to whether insurance coverage was in effect under the provisions of the conditional receipt. Parol evidence is not admissible to vary the express terms of a contract. Thus, plaintiff has not shown an abuse of the trial court's discretion in excluding the testimony from evidence. The assignments of error lack merit.

Equitable Estoppel
The plaintiff contends Jefferson Pilot was estopped from denying coverage to decedent. Plaintiff argues that she and decedent relied to their detriment on Jefferson Pilot's representation of coverage in the conditional receipt because they were prevented from seeking insurance with another carrier.
Estoppel may be appropriate if three elements are established: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. Case v. Louisiana Medical Mutual Insurance Co., 624 So.2d 1285 (La. App. 3rd Cir.1993). A party invoking the estoppel doctrine must have exercised such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding. Case, supra.
In this case, plaintiff testified that she and decedent signed the application acknowledging that they had read the document. She was informed that decedent was required to complete a medical examination as part of the application process. Plaintiff testified that if Eaves had told her coverage was not bound upon payment of the premium, she would have sought coverage with another carrier. However, she did not say that Eaves ever represented there was immediate coverage. Eaves testified he did not tell decedent that he would be covered by insurance before completing the medical exam. Based upon the testimony presented, plaintiff failed to demonstrate that Jefferson Pilot made a representation upon which plaintiff could have reasonably relied to believe that coverage was in effect on the date the premium was paid. Thus, the record supports a finding that Jefferson Pilot was not estopped from denying coverage under the terms of the conditional receipt. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the district court's judgment is affirmed. Costs of this *192 appeal are assessed to the appellant, Alisa Holmes.
AFFIRMED.