# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 28, 2011

No. 10-31016

Lyle W. Cayce
Clerk

ANGELA LEE WARREN FOSTER, Individually and as Trustee of the
ELEANOR F. WARREN FAMILY TRUST, SHONDA FAYE WARREN
LABORDE, WINDY WARREN DARBY, and GEORGE W. WARREN, JR.

> Plaintiffs-Appellees/Cross-Appellants

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY

> Defendant-Appellant/Cross-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:08-CV-01170

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Before her death, Eleanor Warren, through a trust created in her name, applied for a life insurance policy from United of Omaha Life Insurance Company ("United") but omitted mention of her lung condition, heart condition, and recent visits to three physicians. After Warren's death, United rescinded

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31016

the policy because of these omissions.  Plaintiffs-Appellees, Warren's children ("Plaintiffs"), sued United under the policy.  The district court held that Plaintiffs were entitled to recover under the policy because, among other reasons, Warren had no intent to deceive United.  We affirm the district court's ruling that Plaintiffs are entitled to recover under the policy, its award of legal interest, and its ruling that Plaintiffs are not entitled to statutory penalties.

## I.  FACTS & PROCEEDINGS

In 2001, Eleanor Warren, the Plaintiffs' mother, created a trust ("the Trust") for the benefit of her children.  Since 2003, one of Warren's daughters, Angela Lee Warren Foster, has served as Trustee.  Until 2005, the Trust owned a life insurance policy issued by Northwestern Mutual providing insurance benefits in the amount of $1 million to be paid to the Trust following Warren's death.

In 2005, the Smith Insurance Agency ("Smith Agency") suggested to Warren that the Trust would be able to save money on insurance premiums by seeking a different insurer.  The Trust first submitted an application for a replacement policy to Banner Life Insurance ("Banner").  On this application, Warren indicated that she had two treating physicians, Drs. Crackower and Steuben.  She did not indicate on the application that she had received treatment for heart disease, chest pain, or lung ailments.  Banner offered to issue a $1 million term policy, but for a higher than standard rate premium because of Warren's abnormal EKG and blood test results.

Through the Smith Agency, the Trust then submitted a life insurance application to United.  Brandon Smith and Jessica Breaux, employees of the Smith Agency, reproduced the information from the Banner application onto the United application. Warren was not interviewed or physically examined for this application, but Smith asserts that he reviewed the application with Warren

2

over the telephone.  United requested a report on Warren from the MIB Group, a non-profit organization of life insurance companies that collects information on behalf of its members.  The MIB report included a code indicating that Warren suffered from chronic obstructive pulmonary disease ("COPD") as reported in 2001.  United also requested the medical records of Dr. Crackower, Warren's family physician, for the period between June and October 2005.  After this investigation, the Smith Agency sent Warren and Foster the signature pages, but not the medical history section, of the United application, and Warren and Foster signed those pages.

Two weeks after she signed the application, Warren sought treatment from a new physician, Dr. Malek, for shortness of breath and wheezing on exertion.  After ordering tests, Dr. Malek prescribed several drugs, an inhaler, oxygen, and a vaccine.  Warren then saw Dr. Malek's partner, Dr. Fei, who prescribed further treatment for the same condition.  Meanwhile, at Smith's suggestion, Warren agreed to seek a $2 million rather than a $1 million policy.  Some time after United had approved Warren for a $2 million policy,  Dr. Malek referred her to a third new doctor, Dr. Mounir, who concluded that Warren was at a high risk for cardiovascular disease.

The day after her appointment with Dr. Mounir, Warren met Smith for lunch to accept delivery of the United policy.  Warren gave Smith a check for the first premium and signed the delivery receipt, which states that it constitutes an addendum to the policy.  Foster never signed the addendum, although there was a space for the signature of the trustee.  The addendum states that Warren had "no change in health" and had "not consulted a health care provider or been hospitalized" since the date of application.  The addendum also contains the following statement:

> I/We understand that United of Omaha Life Insurance Company is relying upon the information set forth in this Addendum and has

made execution and delivery of this Addendum a condition of delivery of this Policy. Incorrect or misleading information provided herein may void this Policy from its effective date.

Warren died from lung cancer on June 1, 2007. When processing the Trust's claim on the policy, United opened an investigation and learned of Warren's visits to Drs. Malek, Fei, and Mounir. Based on this information, United rescinded the policy and refunded the premiums paid.

The following June, Plaintiffs filed suit against United seeking full payment of the $2 million life insurance policy as well as penalties based on the allegation that United denied the claim without just cause. After a trial on the briefs, the district court concluded that Plaintiffs were entitled to recover the insurance proceeds but not statutory penalties. United filed a notice of appeal. Shortly thereafter, Plaintiffs cross-appealed the portion of the judgment dismissing their claim for statutory penalties.

## II. STANDARD OF REVIEW

When a judgment from a bench trial is appealed, we review questions of law de novo.[1] The findings of fact from a bench trial are reviewed for clear error, regardless whether they are based on oral testimony or documentary evidence.[2] Nevertheless:

> When, as is the case here, the evidence relied upon by the district court in making its findings consists solely of documents in the record, the burden of establishing clear error is not so great as where the court engaged in the judging of witness credibility or in some other way was in a superior vantage point for finding facts.[3]

---

[1] *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011).

[2] FED. R. CIV. P. 52(a)(6); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 228 (5th Cir. 1997).

[3] *Hall*, 105 F.3d at 228; *see also Volkswagen of Am., Inc. v. Jahre*, 472 F.2d 557, 558-59 (5th Cir. 1973).

No. 10-31016

This is because, as we have noted, "we view precisely the same evidence as did the trial judge, from the same vantage point, neither tribunal being aided by those advantages in assessing witness credibility that flow from observing demeanor, reactions, and manner of testifying."[4]

## III.  ANALYSIS

*A.     Insurance Proceeds*

The district court held that United waived its right to rescind Warren's life insurance policy for misrepresentations in her original application by failing to conduct an adequate investigation in light of that which it knew about Warren's health.  The district court also concluded that those misrepresentations cannot be charged to Warren in any event because the application was completed by Smith.  These conclusions are not presently at issue, as United conceded at oral argument that it could not rescind the policy based on misrepresentations in Warren's original application.

Rather, United contends that the addendum to the insurance policy contains misrepresentations that entitle it to rescind the policy.  To deny coverage for misrepresentations in a life insurance application, United must establish that (1) Warren's statements were false, (2) her misrepresentations were made with an actual intent to deceive, and (3) her false statements materially affected its acceptance of risk.[5]  In determining whether an applicant intended to deceive the insurer, a court must examine whether "attending

---

[4] *Cooper v. Dep't of Navy of U.S.*, 594 F.2d 484, 486 (5th Cir. 1979).

[5] La. Rev. Stat. § 22:860; *Johnson v. Occidental Life Ins. Co. of Ca.*, 368 So. 2d 1032, 1036 (La. 1979) (holding that each of these elements must be met in order to rescind policy, notwithstanding the apparently disjunctive language of the statute); *Swain ex rel. Estate of Swain v. Life Ins. Co. of La.*, 537 So. 2d 1297, 1299 (La. Ct. App. 1989) (same).

circumstances" indicate that the insured had knowledge of the falsity and materiality of the misrepresentations.[6]

The district court found that, even if the statements in the addendum to the effect that Warren had "no change in health" and had "not consulted a health care provider or been hospitalized" since signing the original application were inaccurate and material, United failed to establish that Warren made these statements with intent to deceive. Whether an insured intended to deceive an insurer is a factual finding that we review for clear error.[7] The district court based its conclusion that Warren did not intend to deceive United on the following discrete facts. First, Warren had suffered from the same ailments for at least five years, and Drs. Mounir and Malek testified that Warren underwent no change in health between the submission of the application and the delivery of the policy. Second, the court found Smith to be not entirely credible because of multiple inaccuracies and equivocations in his deposition testimony. This, reasoned the district court, gave it cause to question whether Smith thoroughly reviewed the addendum with Warren during the delivery, which took place over lunch in a public restaurant. Third, Warren previously had in place an incontestable life insurance policy with Northwestern Mutual, and she switched policies only at Smith's suggestion. Fourth, when asked specific questions about her medical history in a telephone interview, Warren answered truthfully. The district court did not commit clear error in finding that, for these reasons, United failed to show that Warren intended to deceive it when she signed the addendum.[8]

---

[6] *Johnson*, 368 So. 2d at 1036 (quoting *Watson v. Life Ins. Co. of La.*, 335 So. 2d 518, 521 (La. Ct. App. 1976)) .

[7] *Wohlman v. Paul Revere Life Ins. Co.*, 980 F.2d 283, 285 (5th Cir. 1992).

[8] *See Swain*, 537 So. 2d at 1300 (insufficient evidence that insured had intent to deceive because, among other reasons, "he was not asked to nor did he read the application before

No. 10-31016

United also asserts that the addendum made Warren's truthful disclosure of her medical history a condition precedent to coverage under the policy. Under Louisiana law, a suspensive condition, or condition precedent, is "a fact upon which the rights and duties of the parties depend."[9] Louisiana courts "do not construe stipulations in a contract as suspensive conditions unless the express contract language compels such construction."[10]

Here, the addendum states that "execution and delivery of this Addendum" is "a condition of delivery of this Policy." The parties do not dispute that Warren executed the addendum and that the addendum was delivered to United.[11] The addendum further states: "Incorrect or misleading information provided herein *may* void this Policy from its effective date." (emphasis added). This permissive language does not expressly compel the construction that complete disclosure is a condition precedent to coverage. Further, the circumstances under which a misrepresentation enables an insurer to rescind a policy are set out in Louisiana law, as discussed *supra*.[12] Because the district court did not commit clear error in finding that Warren had no intent to deceive United when she signed the addendum, Plaintiffs are entitled to recover under the policy.[13]

---

signing it"); *see also State Farm Mut. Auto. Ins. Co. v. Bridges*, 36 So. 3d 1142, 1148 (La. Ct. App. 2010) (insured did not intend to deceive insurer "when he was unaware of what was in the form").

[9] LA. CIV. CODE. art. 1767 cmt. (f).

[10] *Tilley v. Lowery*, 511 So. 2d 1245, 1247 (La. Ct. App. 1987).

[11] We need not address Plaintiffs' argument that the addendum did not go into effect because Angela Lee Warren Foster, the Trustee, never signed it. We also note that neither party argues that the policy as a whole did not go into effect because Foster never signed the addendum.

[12] *See* La. Rev. Stat. § 22:860(A) (limiting the kinds of misrepresentations that "shall be deemed material or defeat or void the contract *or prevent it attaching*") (emphasis added).

[13] United's reliance upon *Holmes v. Jefferson Pilot Financial Insurance Co.*, 907 So. 2d 185 (La. Ct. App. 2005), is misplaced. In *Holmes*, the potential insured completed an

## B.    *Interest*

United seeks a reduction in the legal interest, totaling $60,000, that accrued during the time this matter was under advisement by the district court. United appeals to "basic fundamental principles of fairness and equity," but there is no authority to support United's position.[14] Thus, we affirm the district court's award of legal interest in this matter.

## C.    *Penalty*

Plaintiffs have asserted an additional claim for penalties under former Louisiana Revised Statute § 22:656.[15] Under that statute:

> All death claims arising under policies of insurance issued or delivered within this state shall be settled by the insurer within sixty days after the date of receipt of due proof of death, and if the insurer fails to do so without just cause, the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid.

Louisiana courts have held that "[a]n insurer's refusal to pay can be found to be not 'without just cause' even though its defense is not subsequently upheld in

---

application for a life insurance policy and signed a conditional receipt that required him to undergo a medical examination, among other requirements, before the policy could go into effect. *Id.* at 186-87. Holmes died before he could undergo the medical examination. The court held that because Holmes had not fulfilled all of the conditions specified in the receipt at the time of his death, the insurer had not accepted the application and there was no coverage. *Id.* at 190. In the present case, by contrast, United accepted Warren's application, including the addendum. Whether United can nonetheless rescind the policy because of misrepresentations in the addendum is determined by referring to Louisiana law, as discussed *supra*.

[14] *See Trans-Global Alloy Ltd. v. First Nat'l Bank of Jefferson Parish*, 583 So. 2d 443, 457-58 (La. 1991) (under the civil law, prejudgment interest is required in order to make a plaintiff whole).

[15] Now renumbered La. Rev. Stat. § 22:1811 by Acts 2008, No. 415 § 1, eff. Jan. 1, 2009.

court"[16] and that a penalty should not be imposed if the insurer was justified in believing that it had found sufficient reasons to deny the claim.[17]

United's investigation revealed substantial omissions by Warren as to the state of her health and her visits to additional physicians. Even though its defenses have not ultimately prevailed, United was not without just cause in withholding payment under the policy, so we affirm the district court's decision not to impose penalties.

## IV. CONCLUSION

The district court did not commit clear error in finding that Warren had no intent to deceive United when she signed the addendum to the life insurance policy. We therefore affirm the district court's ruling that Plaintiffs are entitled to recover from United under the policy. We also affirm the district court's award of legal interest. Additionally, we affirm the district court's ruling that Plaintiffs are not entitled to recover statutory penalties from United.

AFFIRMED.

---

[16] *Bertrand v. Protective Life Ins. Co.*, 419 So. 2d 1254, 1260 (La. Ct. App. 1982) (citing *Ducote v. Life Ins. Co. of La.*, 245 So. 2d 531 (La. Ct. App. 1971); *see also Hendricks v. Conn. Gen. Life Ins. Co.*, 244 So. 2d 249 (La. Ct. App. 1971)).

[17] *Bertrand*, 419 So. 2d at 1259; *cf. Swain*, 537 So. 2d at 1304 (penalties were justified when an investigation "would have revealed to the defendant that its defenses were spurious").