HARRISON, Judge Pro Tern.
The plaintiff contends that he suffered partial paralysis as the result of faulty monitoring by the defendants during surgery. The defendants appeal from a trial court decision granting summary judgment in favor of the Patient’s Compensation Fund (PCF), which withdrew its prior certification that these parties were qualified health care providers (QHCPs) under the Louisiana Medical Malpractice Act (MMA), La. R.S. 40:1299.41, et seq. The defendants also seek review of the trial court’s denial of their cross motion for summary judgment. For the reasons set forth below, we reverse the trial court’s granting of summary judgment in favor of the PCF and hereby grant summary judgment in favor of the defendants on the issue of the PCF coverage.
FACTS
On October 30, 2007, George Luther underwent fusion surgery on his back at St. Francis Medical Center in Monroe, Louisiana. The surgery was performed by Dr. Gerald Molloy. IOM Company, LLC (f/ k/a Intra-Op Monitoring Services, LLC), provided two employees to monitor the surgery — technician John Partridge, who was in the surgical theater, and Dr. Dan W. Joachim, who remotely monitored from IOM’s office in Covington, Louisiana. A second surgery to remove a screw and attempt to refix the fusion was performed on November 1, 2007. Subsequently, Mr. Luther suffered partial paralysis.
Mr. Luther filed a petition for a medical review panel against St. Francis Medical Center and Dr. Molloy in October 2008. During Dr. Molloy’s deposition on June 29, 2009, facts were developed suggesting that IOM and its employees were negligent in their monitoring of the patient’s neurological functions during the October 2007 surgery and that they failed to advise Dr. Molloy of salient facts which might have altered the surgical results. An amended petition for a medical review panel was filed in July 2009, to add IOM and Dr. Joachim.
In a letter dated July 7, 2009, the PCF certified that IOM and Dr. Joachim were QHCPs under the MMA. (However, in this letter, the Oversight Board reserved the right to revise its qualification and coverage determination upon receipt of additional information.) Following the certification of qualification, Mr. Luther and IOM entered into a voluntary settlement of the dispute on August 11, 2010. In exchange for $100,000, Mr. Luther agreed to release IOM with the understanding that if damages exceeded that amount, he would proceed against the PCF for the balance.
On August 17, 2010, after the Oversight Board received a copy of a petition for approval of settlement, it asserted that their earlier certification was in error and that IOM and Dr. Joachim were not QHCPs.
On October 15, 2010, Mr. Luther and his wife filed suit for damages arising from *470 the surgical procedure against IOM, Dr. Joachim, Mr. Partridge, and Admiral Insurance Company, IOM’s insurer.
In January 2011, IOM and Dr. Joachim filed a dilatory exception of prematurity and a third-party demand. The claim of prematurity was based upon the failure to first present the claim against them to a medical review panel. They also filed a third-party demand against the PCF on the basis of its unexplained reversal of their qualification as health care providers. The PCF responded by filing a dilatory exception of vagueness and a declinatory exception of failure to state a cause of action. Thereafter, IOM and Dr. Joachim filed an amended third-party demand against the PCF and its Oversight Board wherein they asserted that the only relief sought in their third-party demand was a declaration by the court that they are QHCPs within the meaning of the MMA.
In July 2011, the PCF filed a motion for summary judgment in which it asserted that it was entitled to a declaration that neither IOM nor Dr. Joachim was a QHCP. In support of its motion, PCF submitted the affidavit of Susan Gremil-lion, its supervisor of the surcharge section. As such, she supervised processing of health care providers’ applications for enrollment. According to her review of records, an application for IOM to be enrolled as a certified health care provider was received on November 16, 2007. She stated that no further correspondence was received until August 18, 2010, when PCF issued a certificate of enrollment which indicated that the first date of coverage was the date of receipt of the application, November 16, 2007.[1] Ms. Gremillion stated that upon receipt of notice of Mr. Luther’s claim, the PCF issued a letter mistakenly giving notice of coverage; that notice provided that enrollment could be affected by additional information. Due to later inquiries, the PCF discovered that IOM was not enrolled until after the alleged date of malpractice in the instant case. As a result, Ms. Gremillion stated that IOM was not a QHCP for purposes of the subject claim.
In September 2011, IOM and Dr. Joa-chim filed a cross motion for summary judgment in which they argued that since they reasonably relied to their detriment upon the representations of the PCF that they were QHCPs, the PCF is equitably estopped from reversing its qualification determination. They argued that while the July 7, 2009, letter stated that additional information could lead to a revision of the qualification determination, the PCF has never acknowledged the receipt of any such additional information and has not timely responded to relevant discovery requests.
IOM and Dr. Joachim filed the corporate deposition of the PCF through Ms. Gremillion, as well as the deposition of Roderick Johnson, the chairman and CEO of IOM. Ms. Gremillion testified that as medical malpractice compliance director, she oversaw the panel office, which handles all of the incoming complaints, and the surcharge department, which handles the enrollment of health care providers who chose to enroll. She admitted that no additional information was received by the PCF after the initial determination, but that the settlement caused them to “take a second look.” Ms. Gremillion also clarified that, despite the wording of its letter that the Oversight Board reserved the right to revise its determination upon receipt of new information, it was the PCF that actually made these decisions.
*471 Ms. Gremillion described the process by which a health care provider could become enrolled — providing proof of underlying coverage and paying a surcharge — and receive a certification document. There was proof of underlying coverage, but no surcharge payment for October 30, 2007, the date of the alleged malpractice. According to her, IOM never had a certificate of enrollment before October 30, 2007; however, Dr. Joachim had been previously enrolled individually “a few years prior to that time.”[2] Furthermore, she stated that, due to a software problem, the computer system erroneously generated the letter stating they were covered. The error was apparently discovered after a certificate request in connection with the settlement proposal. She could not say whether the computer made any other similar mistakes.
In his deposition, Mr. Johnson testified that the number one factor considered by IOM in settling with the plaintiffs was the belief that they had PCF coverage. He stated that if they known otherwise, it would have affected their thought process about settling. Mr. Johnson testified that he became affiliated with IOM when it was purchased by a group of investors in September 2008. He was under the impression that all of the malpractice insurance was covered when the company was purchased. He conceded that he had not seen any documents proving that IOM was actually enrolled with the PCF on October 30, 2007, and he had no knowledge of IOM and Dr. Joachim applying for PCF coverage on November 16, 2007. However, he had no documents from the PCF saying that they were not QHCPs at the time they entered into the settlement.
Additionally, IOM and Dr. Joachim filed an opposition to the PCF’s motion for summary judgment. They contended that there was no new evidence or additional information to justify the PCF’s change of status and that a health care provider need not be “enrolled” to be qualified. The plaintiffs also filed an opposition to both motions for summary judgment.
A hearing was held on March 12, 2012, at which the matter was taken under advisement. A judgment of dismissal granting summary judgment in favor of the PCF was signed on April 12, 2012. The court found that IOM and Dr. Joachim were not QHCPs within the meaning of the MMA for the purposes of the claim brought by the plaintiffs arising on or about October 30, 2007. The third-party demand and amended third-party demand filed by IOM and Dr. Joachim were dismissed with full prejudice. The same judgment denied the motion for summary judgment filed by IOM and Dr. Joachim. Costs were assessed to IOM. On April 23, 2012, IOM and Dr. Joachim requested written reasons; however, none are found in this record.
IOM and Dr. Joachim appeal from the trial court judgment in its entirety.[3]
LEGAL PRINCIPLES

Summary Judgment

Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Palmer v. Martinez, 45,318 *472 (La.App.2d Cir.7/21/10), 42 So.3d 1147, writs denied, 2010-1952, 2010-1953, 2010-1955 (La.11/5/10), 50 So.3d 804, 805. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. In re Clement, 45,454 (La.App.2d Cir.8/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Palmer v. Martinez, supra.
Because this case involves cross motions for summary judgment, this court must determine whether either party has established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Gray v. American National Property & Casualty Co., 2007-1670 (La.2/26/08), 977 So.2d 839.

Patient’s Compensation Fund

The MMA confers upon QHCPs two major advantages in actions against them for malpractice. First, the liability of a QHCP for all injuries or death for any one patient may not exceed $100,000, and the total amount recoverable from all defendants (including the PCF) for all malpractice claims for injuries or death for any one patient, exclusive of future medical care and related benefits, may not exceed $500,000, plus interest and costs. La. R.S. 40:1299.42(B). Second, no action for malpractice against a QHCP or his insurer may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement. La. R.S. 40:1299.47. See Bennett v. Krupkin, 2000-0023 (La.App. 1st Cir.3/28/02), 814 So.2d 681, 685, writ denied, 2002-1208 (La.6/21/02), 819 So.2d 338; Griffin v. Louisiana Patient’s Compensation Fund Oversight Board, 2004-0613 (La.App. 1st Cir.3/24/05), 907 So.2d 90, 92-93. See also LAC 37:111.503.
Health care providers may take advantage of these benefits only if they “qualify” under the MMA by meeting certain statutory requirements set forth in La. R.S. 40:1299.42(A). These benefits are bestowed on health care providers for as long as their malpractice liability insurance remains in force or while a self-insured health care provider’s security remains undiminished. La. R.S. 40:1299.45(A).
Pursuant to La. R.S. 40:1299.42(A), a QHCP is one who “(1) [files] with the board proof of financial responsibility as provided by Subsection E of this Section,” and “(2) [pays] the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.” Initial qualification of a self-insured healthcare provider is effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Initial qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge. La. R.S. 40:1299.42(A)(3).
The PCF is supported by annual surcharges levied against all QHCPs. La. R.S. 40:1299.44(A)(2)(a). These surcharges are collected on the same basis as premiums by each insurer, the risk manager, and surplus line agent. La. R.S. 40:1299.44(A)(2)(e).
In order to effectuate the provisions of the MMA, the PCF Oversight Board has *473 the authority to adopt and promulgate necessary rules, regulations, and standards. La. R.S. 40:1299.44(D)(3). In furtherance of this aim, the Board promulgated LAC 37:111 with regard to enrollment in the Fund. Williams v. Louisiana Patients’ Compensation Fund Oversight Board, 2005-782 (La.App. 3d Cir.2/1/06), 921 So.2d 1168.
As to the issuance of certifications of enrollment, LAC 37:III.515(A) provides:
Upon receipt and approval of a completed application ... and payment of the applicable surcharge by or on behalf of the applicant health care provider, the executive director shall issue and deliver to the health care provider a certificate of enrollment with the fund, identifying the qualified health care provider and specifying the effective date and term of such enrollment and the scope of the fund’s coverage for that health care provider.
The timeliness of payment of surcharges is addressed in LAC 37:III.711(E), which states, in relevant part:
It is the purpose of § 711 that insurers and approved self-insurance trust funds remit surcharges collected from their insured providers to the board timely. The timeliness of surcharge remittances to the board by insurers and approved self-insurance trust funds shall not affect the effective date of fund coverage. However, the failure of insured health care providers to timely remit applicable surcharges to insurers and approved self-insurance trust funds for renewal may result in lapses of coverage with the fund. [Emphasis added.]

Equitable Estoppel

Equitable estoppel is a jurisprudential doctrine involving the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. MB Industries, LLC v. CNA Insurance Company, 2011-0303 (La.10/25/ll), 74 So.3d 1173; Blanchard v. ABC Insurance Company, 38,005 (La.App.2d Cir.3/3/04), 867 So.2d 901, writ denied, 2004-1101 (La.9/3/04), 882 So.2d 607. There are three elements required to establish equitable estoppel: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one’s detriment because of the reliance. MB Industries, LLC v. CNA Insurance Company, supra.
Estoppel is not favored in our law. Blanchard v. ABC Insurance Company, supra. A party invoking the estop-pel doctrine must have exercised such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding. Holmes v. Jefferson Pilot Financial Insurance Company, 39,721 (La.App.2d Cir.6/29/05), 907 So.2d 185, writ denied, 2005-1985 (La.2/3/06), 922 So.2d 1185.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. La. C.C. art. 1967.
DISCUSSION
The issue presented here is not whether IOM and Dr. Joachim were properly enrolled at the time of the alleged malpractice. It is whether the PCF can withdraw its certification that they were QHCPs after they relied upon that certification to enter into a settlement and when the PCF has not received any additional information since it issued the certificate.
*474 IOM and Dr. Joachim argued that at the time of the alleged malpractice, they had the requisite insurance but were approximately two weeks late paying a surcharge to the PCF. Shortly after they were added as defendants, the PCF certified them as QHCPs in a letter which reserved its right to revise its qualification and coverage determinations upon receipt of additional information. They further argued that since the PCF had the discretion to waive late surcharge payments, they reasonably relied upon the certification and decided to settle instead of mounting a defense.
In Bramlet v. Lakeside Hospital, 96-15 (La.App. 5th Cir.6/25/96), 690 So.2d 63, the fifth circuit found that the PCF was equitably estopped from denying that the defendant hospital was a QHCP. There a petition for damages was filed against the hospital in September 1988. The Commissioner of Insurance initially issued a letter declaring' that the hospital was not a QHCP. However, in January 1989, the hospital was informed by letter that it was, in fact, a QHCP for purposes of the claim. In December 1994, the plaintiffs filed for judicial approval of a settlement with the hospital. The PCF then advised counsel for the hospital by letter that it was withdrawing its certification of the hospital as a QHCP for the claim. The PCF filed rules and exceptions objecting to the settlement. The trial court ruled in favor of the hospital, finding that it was a QHCP for the claim. The PCF appealed.
The fifth circuit affirmed the decision of the trial court. It enumerated the elements of equitable estoppel set forth by the Louisiana Supreme Court — (1) a representation by conduct or work; (2) justifiable reliance; and (3) a change of position to one’s detriment because of the reliance — and observed that the hospital had relied upon the PCF’s assertions that it was a QHCP for purposes of this claim. The court also cited La. C.C. Art. 1967. Furthermore, relying upon Steptore v. Masco Construction Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213, the court noted as illustrative that in an insurance claim, “when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured’s defense without obtaining a non-waiver agreement to reserve its coverage defense, the insurer waives such policy defense.”
The PCF attempts to distinguish Bramlet due to the greater length of time between its initial certification and its attempted reversal. However, we find no merit to this argument. Regardless of the amount of time, the fact remains that the appellants were certified by the PCF as QHCPs and that they relied upon this certification in entering into a settlement with the plaintiffs, just like the hospital in the Bramlet case.
In the letter accompanying its certification of qualification, the PCF reserved the right to reassess its determinations of qualification and coverage upon receipt of additional information. However, it concedes that it received no new information between the granting and the withdrawal of its certification of the appellants as QHCPs in the instant case. It attempts to blame the issuance of the certificate upon a “computer glitch.” However, inasmuch as the alleged mistake was made by PCF’s own computer system over which it had oversight and control, this argument must fail.
 The PCF also contends that the appellants’ reliance upon the certification was unreasonable because they should have known that they were not qualified. However, the jurisprudence and the statutes indicate that the PCF has some discretion in determining whether a health *475 care provider is qualified. See Bramlet v. Lakeside Hospital, supra; In Re Medical Review Proceedings, Jack Catalanotto v. Lifemark Hospitals of Louisiana, Inc., 94-403 (La.App. 5th Cir.12/14/94), 648 So.2d 970. The appellants were not unreasonable in relying upon the certification when the exercise of such discretion was vested in the PCF.
We find that summary judgment in favor of the PCF was not warranted in the instant matter. Accordingly, we reverse the trial court’s granting of the PCF’s motion for summary judgment.
Additionally, we find that the trial court erred in denying the appellants’ motion for summary judgment. We hereby grant summary judgment in favor of the appellants.
CONCLUSION
The decision of the trial court granting the Patient’s Compensation Fund’s motion for summary judgment is reversed.
We convert IOM and Dr. Joachim’s appeal of the denial of their cross motion for summary judgment to a writ application and grant the writ. Summary judgment is rendered in favor of IOM and Dr. Joachim, holding that the PCF is prohibited from withdrawing its certification that they are QHCPs for this claim.
Costs of this appeal are assessed to the appellee, Patient’s Compensation Fund. We remand the matter to the trial court for further proceedings.
REVERSED; WRIT GRANTED; JUDGMENT DENYING DEFENDANTS’ CROSS MOTION FOR SUMMARY JUDGMENT REVERSED; JUDGMENT RENDERED IN DEFENDANTS’ FAVOR GRANTING MOTION.

. While the actual certificate gives the enrollment period as beginning "11/15/2007,” the date on the affidavit appears to have been changed in ink to "November 16, 2007.”

. The record indicates that Dr. Joachim had coverage in 2006.

. To the extent that the appellants are seeking review of the denial of their cross motion for summary judgment, an interlocutory judgment, we exercise our supervisory jurisdiction to convert the appeal to a writ application. See Hood v. Cotter, 2008-0215, 2008-0237 (La.12/2/08), 5 So.3d 819.